[No. H026142. Sixth Dist. May 27, 2004.]

HOLIDAY MATINEE, INC., Plaintiff and Appellant, v.
RAMBUS, INC, Defendant and Respondent.

**COUNSEL**

Green & Jigarjian, Robert S. Green, Jenelle Welling; Finkelstein, Thompson & Loughran, Shannon Patricia Keniry, Doug G. Thompson and Mila F. Bartos for Plaintiff and Appellant.

Wilson, Sonsini, Goodrich & Rosati, Robert P. Feldman, Maura L. Rees and Douglas J. Clark for Defendant and Respondent.

**OPINION**

**ELIA, J.**—This consumer class action arises out of alleged anticompetitive conduct in connection with patents on certain computer memory chip technology obtained by defendant and respondent, Rambus, Inc. (Rambus). Plaintiff and appellant Holiday Matinee, Inc. (Holiday) alleged three causes of action in its second amended complaint (Complaint): a claim for violation of the Cartwright Act (Bus. & Prof. Code § 16720 et seq.); a claim for violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.); and a claim for unjust enrichment.

The case is before us as a result of a stipulated judgment of dismissal that was entered after the court below sustained Rambus's demurrer to each cause of action of the Complaint. Rambus's challenges to the Complaint included lack of subject matter jurisdiction, litigation privilege (Civ. Code, § 47, subd. (b)), privilege under the *Noerr-Pennington* doctrine,[1] and failure to allege facts sufficient to constitute a cause of action. Holiday contends that the trial court erred in concluding that the Complaint failed to allege facts sufficient to constitute a cause of action.

For the reasons stated below, we conclude that the trial court correctly sustained the demurrer to the Complaint. We therefore affirm the judgment.

## FACTS

The facts recited below are from the allegations made by Holiday in the Complaint. In reviewing the propriety of the trial court's sustaining of the demurrer, we, of course, accept as true the factual allegations properly pleaded in the Complaint. (See *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 193 [126 Cal.Rptr.2d 908, 57 P.3d 372]; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152 [2 Cal.Rptr.3d 396].)

### I.   *General Allegations.*

Holiday is an independent publicity and marketing company that is based in San Diego. Rambus is a Delaware corporation with its principal place of business in Los Altos, California.

The relevant product market at issue is the market for certain computer memory chip technology, i.e., dynamic random access memory (DRAM). The DRAM technology market comprises three distinct technologies: (1) Rambus dynamic random access memory technology (RDRAM); (2) synchronous dynamic random access memory (SDRAM); and (3) double-data synchronous dynamic access memory technologies (DDR). The relevant geographic market is worldwide. Rambus is alleged to have a monopoly market share of the relevant product and geographic markets, in that Rambus (a) has a 100 percent share of RDRAM technology, and (b) holds approximately 70 percent of the overall DRAM technology market (RDRAM, SDRAM, and DDR technologies).

The claims asserted in the Complaint arise out of Rambus's "anticompetitive use of its wrongfully obtained market power in the relevant market for

---

[1] The name of this doctrine derives from *Eastern R. Conf. v. Noerr* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523], and *Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585].

. . . [DRAM] to coerce DRAM manufacturers into license agreements in restraint of trade." This anticompetitive scheme occurred (as detailed below) as a result of Rambus's participation in an open forum of DRAM manufacturers called JEDEC (Joint Electronics Devices Engineering Council). Rambus participated in JEDEC to influence "the evolution of industry-standard ('JEDEC compliant') DRAM architecture, all the while concealing from JEDEC and its members that it was obtaining patents to cover features of these new industry standard technologies." Rambus concealed these patents in violation of JEDEC rules, and then "sought to enforce its patent rights against DRAM manufacturers" through various anticompetitive means.

On April 18, 1990, Rambus filed a patent application, number 07/510,898 ('898 application). The '898 application "is alleged to be the essential innovation" for the development of SDRAM devices. Beginning in March 1992, "Rambus filed several piggy-back patent applications to the '898 application to ensure its own patents would include the features of the underlying architecture required to manufacture JEDEC compliant SDRAM and DDR."

## II. *Rambus's Participation in JEDEC.*

In 1991, JEDEC began formulating industry-wide technical open standards for the purpose of ensuring that various SDRAM technologies would be compatible with the architecture of each DRAM manufacturer. JEDEC had "a 'basic rule' that the standardization process must be conducted in a manner that 'shall not be proposed for or indirectly result in . . . restricting competition, giving a competitive advantage to any manufacturer, [and/or] excluding competitors from the market.' " Consistent with its governing rules, JEDEC had attempted to avoid incorporating patented technologies into its standards, so that the standards would "be available to all on royalty-free terms or otherwise reasonable and non-discriminatory terms." In accordance with this policy, JEDEC required that its members disclose all existing and pending patents that covered technologies being considered by the body as the industry standard.

Rambus joined JEDEC in early 1992 and withdrew from the organization in June 1996. Rambus used various subcommittee forums for the purpose of incorporating technical information about SDRAM and DDR technologies into Rambus's own patents, and in order to promote its own RDRAM technologies.

Rambus regularly attended the JEDEC committee meetings, during which the members discussed SDRAM technologies and future industry standards for SDRAM and DDR. On June 11, 1992, Richard Crisp, a Rambus

executive, completed four JEDEC ballots. On each ballot, Rambus "intentionally failed to disclose to the JEDEC committee the existence of the '898 application or any of the new patent applications that lay claim to the architecture being developed as the open standards." This intentional omission by Rambus occurred, notwithstanding the fact that JEDEC ballots stated: "If anyone receiving this ballot is aware of patents involving this ballot, please alert the Committee according to your voting response"[2] In March 1993, Billy Garrett, another Rambus executive, attended a JEDEC committee meeting in which the members approved an SDRAM standard and forwarded it to the JEDEC Council for final review.

On June 26, 1996, Rambus advised JEDEC in writing that it would not be renewing its JEDEC membership. In that notice, Rambus referred to 23 DRAM technology patents and made "a vague reference to additional patent applications." Rambus, however, omitted from the notice "one particular '898 piggy-back patent issued in April 1996 . . . cover[ing] the architecture in JEDEC compliant SDRAM and DDR technologies."

III. *Claims Against Rambus.*

The Complaint alleges that Rambus intentionally defrauded JEDEC members, inter alia, by failing to disclose information about its patents, by obtaining additional patents covering features of JEDEC standards for SDRAM's, and by urging JEDEC members to adopt into JEDEC standards at least four core technologies. Rambus did not reveal its SDRAM and DDR patents until November 1999; at that point, JEDEC had already adopted Rambus's patents as the industry standard, and "DRAM manufacturers and consumers had [long since] become 'locked in' to the JEDEC compliant architecture." The Complaint alleges, as an example, that Infineon designed new products consistent with the JEDEC standard and built production lines in this country and in Germany to make those products. When Rambus disclosed its patents, Infineon (alternatively) was forced to abandon its products and investment in the production lines, pay "exorbitant royalties" to Rambus, or engage in litigation with Rambus concerning claims that Infineon's products infringed Rambus's patents.

Rambus used its patents to "coerce DRAM manufacturers into unfair and deceptive license agreements after they were locked in to manufacturing the JEDEC compliant SDRAM and DDR architecture." This "coercive scheme" was accomplished by Rambus making demands that DRAM manufacturers

---

[2] Crisp also abstained from voting—during votes on one or more unspecified dates—on more than 100 JEDEC ballots, thereby "abstaining from disclosing Rambus' patents, and pending patent applications, covering JEDEC compliant standardized DRAM technologies."

enter into agreements with it to license SDRAM, DDR, or RDRAM technology. Rambus attempted to move the manufacturers away from SDRAM and DDR technology to the more expensive RDRAM technology by charging royalty rates on RDRAM technology that were significantly lower than the rates it charged for the alternative DRAM technologies.

Rambus's "licensing scheme" (the Complaint alleges) was unlawful, in that Rambus was not entitled to charge any royalties for the licensing of SDRAM or DDR technologies, because "any patent protection that Rambus obtained for those technologies was procured through fraud." Therefore, the royalty rates Rambus charged for licensing RDRAM technology were improperly inflated, because DRAM manufacturers—had they not been faced with Rambus's wrongful royalty claims for SDRAM and DDR technologies— would have chosen to use either DDR technology (with no licensing fees), or RDRAM technology at lower licensing rates than those ultimately charged by Rambus.

Rambus carried out the alleged "coercive licensing scheme" by threatening and/or filing baseless infringement litigation against manufacturers that refused its demands for royalties. Rambus did so despite knowing that its claims for royalties against JEDEC members were "wrongful and unenforceable," as a result of Rambus's actions in the development of JEDEC's open standards policies. The Complaint alleges that Rambus filed patent infringement actions against several DRAM manufacturers, including Infineon.[3] Rambus also demanded higher royalties from those manufacturers that chose to engage in litigation, and Rambus "made it clear that any manufacturer who lost such a lawsuit would be cut off completely from licensing any Rambus technology."

The Complaint alleges that Rambus's wrongful acts and practices constituted unlawful combinations to restrict trade, prevent competition, and/or to pool, combine or unite interests connected with the sale of products, affecting the price of the products, in violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.). Rambus's acts, omissions, misrepresentations, practices and nondisclosures also constituted unlawful, unfair, and fraudulent

---

[3] In connection with this allegation, Holiday alleged that "Rambus' patent infringement action against Infineon Technologies went to trial in the United States District Court for the Eastern District of Virginia," with a result adverse to Rambus, because the jury found that Rambus's patents "were baseless and unenforceable because [they] . . . were procured by [Rambus] through deceptive and fraudulent conduct." Holiday, however, did *not* disclose to this court (in its opening brief) that these findings of fraud perpetrated by Rambus and noninfringement of Rambus's patents were *reversed on appeal* by the Federal Circuit Court of Appeals. (See *Rambus Inc. v. Infineon Technologies AG* (Fed. Cir. 2003) 318 F.3d 1081, cert. den. *sub nom.* Court of Appeals *Infineon Technologies, AG v. Rambus, Inc.* (2003) 540 U.S. 874 [157 L.Ed.2d 135, 124 S.Ct. 227].) This reversal occurred *prior to* the date the court below ruled on Rambus's demurrer to the Complaint.

business practices in violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). Lastly, the Complaint alleges that Rambus's actions caused it to be unjustly enriched.

Holiday alleges that it and members of its class were damaged by Rambus's conduct in that they paid "supracompetitive" prices for products (i.e., computers) that incorporated DRAM technology. The royalties unlawfully charged by Rambus to DRAM manufacturers were passed along to consumers, Holiday and members of its class.

## PROCEDURAL HISTORY

Holiday filed its initial complaint on March 22, 2002. On September 23, 2002, the trial court sustained Rambus's demurrer to each cause of action with leave to amend. Thereafter, Holiday filed its first amended complaint. The court sustained Rambus's demurrer to this amended pleading with leave to amend on December 16, 2002.

On December 20, 2002, Holiday again amended its pleading by filing the Complaint, alleging three causes of action against Rambus. By its order filed March 27, 2003, the trial court again sustained (with leave to amend) the demurrer as to each cause of action of the Complaint. In its order, the court stated that it "[did] not reach the issue of subject matter jurisdiction." Holiday elected not to amend the Complaint after entry of the court's order.

The court entered a judgment of dismissal pursuant to the stipulation of the parties on April 17, 2003. Holiday filed timely its notice of appeal on June 19, 2003.

## DISCUSSION

### I. *Standard of Review.*

■ The function of a demurrer is to test the sufficiency of the complaint as a matter of law, and it raises only a question of law. (See Code Civ. Proc., § 589; *Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1706 [42 Cal.Rptr.2d 172].) On a question of law, we apply a de novo standard of review on appeal. (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 937 [29 Cal.Rptr.2d 669].)

■ A general demurrer is appropriate where the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) Although privilege is typically asserted as an affirmative defense, it may be raised by general demurrer where the existence of privilege appears

from the face of the complaint. (*Pavlovsky v. Board of Trade* (1959) 171 Cal.App.2d 110, 113 [340 P.2d 63].)

A demurrer is likewise appropriate where the complaint on its face discloses that "[t]he court has no jurisdiction of the subject matter of the cause of action." (Code Civ. Proc., § 430.10, subd. (a).) Such a demurrer "is functionally similar to a demurrer for failure to state a cause of action, and therefore is deemed a 'general demurrer.' [Citation.]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2003) ¶ 7:64, p. 7-29, citing *Buss v. J. O. Martin Co.* (1966) 241 Cal.App.2d 123, 133 [50 Cal.Rptr. 206].)

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], quoting *Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].) The trial court's construction of the pleadings is not binding upon us; we determine independently whether the complaint states a cause of action. (*Schmidt v. Foundation Health*, *supra*, 35 Cal.App.4th at p. 1706.)

"A general demurrer will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶ 7:49, pp. 7-24 to 7-25, italics in original.)" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183 [123 Cal.Rptr.2d 637].) Where a demurrer is sustained with leave to amend and the plaintiff elects not to amend the complaint, "it is presumed that the complaint states as strong a case as is possible [citation]; and the judgment of dismissal must be affirmed if the unamended complaint is objectionable on any ground raised by the demurrer. [Citations.]" (*Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457 [212 Cal.Rptr. 743].)

II. *Issues Raised on Appeal.*

Rambus challenged the sufficiency of the Complaint (both below and on appeal) on several grounds. First, Rambus asserted that each cause of action was demurrable under Code of Civil Procedure section 430.10, subdivision (a), because the court lacked jurisdiction over the subject matter of the action. Rambus contended that the three claims were barred because they each necessarily required resolution of a substantial issue of patent law over which federal courts have exclusive jurisdiction.

Second, Rambus claimed that the absolute litigation privilege under Civil Code section 47, subdivision (b), barred each of Holiday's claims. Rambus

argued that all conduct alleged in the Complaint to have been actionable—i.e., prosecution of baseless litigation against DRAM manufacturers and threatening such litigation—was subject to the litigation privilege.

Third, Rambus's demurrer challenged the claims on the basis that they were barred under the *Noerr-Pennington* doctrine. Rambus claimed that this doctrine—for reasons parallel to those asserted in connection with the litigation privilege—served as a bar to the alleged actionable conduct of threatening to file, and the filing of, infringement suits.

Fourth, Rambus contended that the Complaint failed to allege facts sufficient to constitute a cause of action, under Code of Civil Procedure section 430.10, subdivision (e). Rambus asserted that, for a variety of reasons, Holiday's pleading was insufficient to state claims for violation of the Cartwright Act, violation of the unfair competition law, and for unjust enrichment.

The court below expressly did not reach the issue of subject matter jurisdiction. Since the question of subject matter jurisdiction, however, is a threshold matter that we must address whenever it is raised (see *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325]), we will consider first whether the action is maintainable in state court. As we will explain, the claims alleged in the Complaint present substantial issues of patent law that invoke exclusive federal jurisdiction. Since we conclude that the court lacked subject matter jurisdiction over the Complaint (and that, hence, the demurrer was properly sustained), we do not reach the merits of the remaining challenges to the Complaint.

III.  *Exclusive Federal Jurisdiction.*

A.  *Applicable law.*

The district courts of the United States "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." (28 U.S.C. § 1338(a) (section 1338(a)).) Such federal question jurisdiction "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800, 808–809 [100 L.Ed.2d 811, 108 S.Ct. 2166] (*Christianson*); see also *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.* (2002) 535 U.S. 826 [153 L.Ed.2d 13, 122 S.Ct. 1889].)

Under this "well-pleaded complaint" rule, the court determines "whether a claim 'arises under' patent law ' ". . . from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." ' *Franchise Tax Board [of California v. Construction Laborers Vacation Trust* (1983) 463 U.S. 1,] 10 [77 L.Ed.2d 420, 103 S.Ct. 2841] (quoting *Taylor v. Anderson* (1914) 234 U.S. 74, 75–76 [58 L.Ed. 1218, 34 S.Ct. 724]). [Citation.] Thus, a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law." (*Christianson, supra,* 486 U.S. at p. 809.) Further, federal jurisdiction under section 1338(a) is not established where a claim is supported by alternative theories, "unless patent law is essential to each of those theories." (*Christianson* at p. 810.)

Thus, "[e]very action that involves, no matter how incidentally, a United States patent is not for that reason governed exclusively by federal law." (*Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 216 [308 P.2d 732].) Our courts have recognized that they have jurisdiction over actions to recover royalties provided under patent licensing agreements, as well as actions to specifically enforce or rescind such agreements, notwithstanding the existence of incidental patent issues. (*Id.* at p. 217; see also *Adkins v. Lear, Inc.* (1967) 67 Cal.2d 882, 890–891 [64 Cal.Rptr. 545, 435 P.2d 321]; *H. J. Heinz Co. v. Superior Court* (1954) 42 Cal.2d 164, 172–173 [266 P.2d 5]; *Rogers v. Hensley* (1961) 194 Cal.App.2d 486, 490–491 [14 Cal.Rptr. 870].)

In support of its contention that state courts have no jurisdiction over the subject matter of this action, Rambus cites *Hunter Douglas, Inc. v. Harmonic Design, Inc.* (Fed. Cir. 1998) 153 F.3d 1318 (*Hunter Douglas*), overruled on other grounds in *Midwest Industries, Inc. v. Karavan Trailers, Inc.* (Fed. Cir. 1999) 175 F.3d 1356, 1358–1359. In *Hunter Douglas*, the plaintiff sued its competitors in the field of motorized window shades—the patentee (Harmonic), and two parties holding licenses from the patentee. (*Hunter Douglas, supra,* 153 F.3d at p. 1321.) The plaintiff sought a declaratory judgment of noninfringement and a determination that one of the defendant's patents were invalid or unenforceable; it also alleged state law claims, including claims for injurious falsehood and for violation of Business and Professions Code section 17200. (*Hunter Douglas,* at p. 1322.) It alleged that the defendants knew or should have known that the Harmonic patents were invalid, and that the defendants " 'falsely and recklessly assert[ed] title to public property,' . . . '[thereby] slander[ing] and injur[ing]' Hunter Douglas's rights." (*Ibid.*)

The court concluded that the claim for declaratory relief was not maintainable because it did not satisfy the "actual controversy" requirement of the

federal Declaratory Judgment Act, section 2201(a) of title 28 of the United States Code. (*Hunter Douglas, supra,* 153 F.3d at pp. 1325–1328.) The circuit court then considered the jurisdictional challenge to the plaintiff's pendent state law claims. Citing *Christianson,* it concluded that the plaintiff's injurious falsehood claim was an action "arising under" federal patent law. (*Hunter Douglas, supra,* 153 F.3d at p. 1329.) It reasoned that a requisite element of the claim, falsehood, depended upon resolving federal patent law questions, namely, whether Harmonic's patents were invalid or whether all of its claims were unenforceable. (*Ibid.*) The court reasoned further that all theories of the injurious falsehood claim "depend[ed] on resolving a question of federal patent law, because Hunter Douglas [did] not plead, in its complaint, any other basis for a falsity on the Defendants' part. [Citation.]" (*Ibid.*)

The court in *Hunter Douglas* noted that, following the Supreme Court's decision in *Christianson,* the Federal Circuit had held that at least four patent issues were of sufficient substantiality to satisfy the "arising under" jurisdictional test: (a) infringement; (b) inventorship issues; (c) attorney's fees requests under section 285 of title 35 of the United States Code; and (d) the revival of an unintentionally abandoned patent application (35 U.S.C. §§ 41, 133), or the right to file a continuation application (35 U.S.C. § 120). (*Hunter Douglas, supra,* 153 F.3d at p. 1330.) The court indicated that it saw no reason to treat questions of a patent's validity and enforceability in a manner different from infringement issues. (*Id.* at pp. 1330–1331.) The *Hunter Douglas* court therefore held "that the questions of federal patent law— validity and enforceability—[were] 'substantial' enough to convey section 1338(a) jurisdiction." (*Id.* at p. 1329.)

Similarly, the Federal Circuit held that federal patent law issues were implicated in a plaintiff's state law business disparagement claims, thereby invoking jurisdiction under section 1338(a). (See *Additive Controls & Measurement Sys. v. Flowdata* (Fed. Cir. 1993) 986 F.2d 476 (*Additive Controls*).) In *Additive Controls,* the plaintiff sued its competitor in state court after the latter had written to the plaintiff's customers, warning that the plaintiff's product infringed the defendant's patent. (*Id.* at p. 477.) The plaintiff sought injunctive relief and damages for alleged interference with its business operations. (*Ibid.*) The defendant removed the case to federal court, and it answered and counterclaimed against the plaintiff for patent infringement. (*Ibid.*)

The circuit court affirmed the district court's determination that the defendant had properly removed the case, concluding that the plaintiff's business disparagement claim "arose under" federal patent law, in light of the fact that the plaintiff's "right to relief depend[ed] upon the resolution of a substantial question of patent law." (*Additive Controls, supra,* 986 F.2d at p. 479.) In so holding, the Federal Circuit reasoned that the plaintiff was required to

establish that the defendant's allegedly disparaging statements were false, and this falsity had to be proved by showing that the plaintiff's products did not infringe the defendant's patent. (*Id.* at p. 478.) Thus, the plaintiff's "right to relief necessarily depend[ed] upon resolution of a substantial question of patent law, in that proof relating to patent infringement [was] a necessary element of [the plaintiff's] business disparagement claim." (*Ibid.*; see also *3 D Systems, Inc. v. Aarotech Laboratories, Inc.* (Fed. Cir. 1998) 160 F.3d 1373 [federal patent law jurisdiction over state law claim for trade libel, where determination of libel required proof of infringement].)

### B.   *Exclusive federal jurisdiction over Holiday's claims.*

In our discussion and application of the foregoing authorities to this case, we are mindful, as one federal circuit court has observed, that "[t]he line between cases that 'arise under' patent and copyright laws, as contemplated by 28 U.S.C. § 1338(a), and those that present only state law contract issues, is 'a very subtle one,' [citation] and the question leads down 'one of the darkest corridors of the law of federal courts and federal jurisdiction.' [Citation.]" (*Arthur Young & Co. v. City of Richmond* (4th Cir. 1990) 895 F.2d 967, 969, fn. 2.) This acknowledgment of the difficulties inherent in deciding such questions of jurisdiction notwithstanding, we conclude that the claims asserted by Holiday are ones that clearly "arise under" federal patent law.

At the outset, we note in passing that federal patent law does not "create" any of the causes of action alleged by Holiday in the Complaint. The three claims are entirely state law causes of action and therefore do not satisfy the first *Christianson* prong of federal patent law jurisdiction. (See *Christianson, supra,* 486 U.S. at pp. 808–809.) The more complex analysis, however, is whether, from a review of Holiday's "well-pleaded complaint," it is clear that Holiday's "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Id.* at p. 809.)

A very superficial review of the Complaint discloses that its allegations bear a very significant relationship to patent issues. As noted by Rambus, the Complaint contains no less than *63 references* to "patent" or to derivatives of that word. Similarly, the Complaint contains at least *75 references* to other words (or their derivatives) that are commonly associated with patent questions (e.g., "infringe," "license," or "royalty"). While the frequency of these references in the Complaint to patent issues is hardly determinative, it is at least suggestive that the claims *may* turn on the application of federal patent law.

A more substantive review of the allegations of the Complaint confirms this conclusion. The crux of Holiday's claims is that (a) Rambus obtained relevant patents in violation of its disclosure obligations to JEDEC and its members, and (b) Rambus unfairly and unlawfully took advantage of those patent rights by exacting royalties to which it was not entitled. The Complaint refers repeatedly to Rambus enforcing its patent rights and/or wrongfully claiming royalties and licensing fees from DRAM manufacturers as a result of Rambus obtaining patents covering JEDEC-compliant DRAM's.[4] Holiday alleges that Rambus forced its competitors to pay "exorbitant royalties" and to enter into "unfair and deceptive license agreements," in order to avert claims by Rambus of patent infringement.

The Complaint asserts that "Rambus is not entitled to charge *any* royalty rate whatsoever for the SDRAM and DDR technology, as any patent protection that Rambus obtained for those technologies was procured through fraud." Holiday alleges further that "Rambus knew at the time that it made its royalty fee demands and filed its patent infringement action, that its patents covering JEDEC compliant DRAM were unenforceable due to the nature of Rambus' fraud on JEDEC. Rambus knew that if its fraudulent conduct were exposed it could not reasonably expect to succeed on the merits in litigation to enforce its patent."

In short, at the heart of each of Holiday's claims was the assertion that Rambus had unfairly charged royalties, threatened litigation, and filed baseless lawsuits, all based upon patents that were invalid and unenforceable because they "were obtained through breaches of contract with and fraudulent misrepresentations and/or omissions to JEDEC." The Cartwright Act, unfair competition law, and unjust enrichment claims were founded upon the allegation that Holiday and its class members—as the ultimate consumers who purchased computers incorporating DRAM products—paid inflated prices; DRAM manufacturers passed on to the customer either the royalties improperly charged by Rambus or the cost of litigating Rambus's baseless patent infringement claims.

Thus, each of Holiday's claims required a showing that Rambus's patents were invalid and unenforceable as against JEDEC members. Under *Hunter Douglas*, questions of patent validity and enforceability, like patent

---

[4] See, e.g., Complaint, paragraphs 2–4, 7, 26, 27, 39, 41, 42, 44–50, 52, 53, 66(a), 66(b), 66(c), 66(d), 68, 75(b), 75(d), 81–84.

infringement, are substantial issues of patent law that invoke exclusive federal jurisdiction under section 1338(a). (*Hunter Douglas, supra*, 153 F.3d at p. 1330.)

Holiday contends, however, that its action does not "arise under" federal patent law because it does not allege patent infringement or fraud upon the United States Patent and Trade Office (USPTO). It argues that its claims are based upon Rambus's decade-long "course of conduct," which does not implicate federal patent laws. Holiday argues that *Hunter Douglas* is inapposite because the Federal Circuit concluded that the state law claim of injurious falsehood arose under patent law, and did not hold that the unfair competition claim was similarly governed by section 1338(a). We are not persuaded by Holiday's arguments.

■ In order for a case to "arise under" patent law, it is not essential that there be an allegation of patent infringement or fraud on the USPTO. As noted, the court in *Hunter Douglas* concluded that, where questions of patent invalidity or enforceability are to be determined, the case "arises under" federal patent law. (*Hunter Douglas, supra*, 153 F.3d at p. 1330.) The fact that Holiday alleges that Rambus's patents are invalid or unenforceable as a result of a lengthy "course of conduct" does not change the fact that substantial patent issues must be decided in this case.

■ We must conclude that Holiday's "right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims. [Citations.]" (*Christianson, supra*, 486 U.S. at p. 809.) Therefore, irrespective of the merits of Rambus's other challenges—and notwithstanding the nonjurisdictional basis of the trial court's decision—the Complaint was demurrable because of the absence of jurisdiction over the subject matter of the action.[5]

---

[5] Our conclusion here is not meant to suggest that a plaintiff, under no circumstances, may allege claims in California courts under the Cartwright Act and/or the unfair competition law, merely because they involve patents in some respect. As we have noted, the mere fact that the action involves a patent, albeit incidentally, does not mean that the case is subject to exclusive jurisdiction of the district courts of the United States. (*Farmland Irrigation Co. v. Dopplmaier, supra*, 48 Cal.2d at p. 216.) We hold, however, in this instance that Holiday—based upon a twice amended pleading that it elected not to amend a third time—has alleged claims, the resolution of which depends upon a substantial question of federal patent law.

## DISPOSITION

The claims alleged in the Complaint arise under federal patent law. As such, California courts lack subject matter jurisdiction over Holiday's claims. Accordingly, the trial court properly sustained the demurrer to each cause of action, and the judgment is affirmed.

Rushing, P. J., and Premo, J., concurred.