Filed 6/25/21  Hawk v. Hulett CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ERIN HAWK, et al., | D077594 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No.  37-2019-00049839-CU-NP-NC) |
| JEFFERY HULETT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Law Offices of Bryan W. Pease, Bryan W. Pease; The Opus Law Firm and Charles L. Pernicka for Defendant and Appellant.

IPLA, John M. Kim, Benjamin S. White, Zayde J. Khalil; Sahagun Law and Bryan Owens Sahagun for Plaintiffs and Respondents.

Erin Hawk and Jeremiah Miller (Hawk and Miller together as Respondents) sued Jeffery Hulett for allegedly unneighborly conduct, which included harassment, trespass, and the filing of multiple complaints with the City of Encinitas (City).  In response, Hulett filed a special motion to strike

the complaint under the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, Code of Civil Procedure section 425.16.[1] The superior court concluded that Hulett's filing of multiple complaints with the City was protected conduct under the anti-SLAPP statute and Respondents did not carry their burden of showing a probability of success on the merits. As such, the court struck two of the eleven causes of action alleged in the complaint because those two causes of action were based entirely on Hulett's complaints to the City. In addition, the court struck multiple allegations in the complaint concerning Hulett's complaints to the City.

Hulett appeals, contending the superior court erred in not striking the entire complaint. He maintains that every cause of action alleged in the operative complaint relied primarily upon the complaints he filed with the City. As such, he asserts the court should have required Respondents to show a probability of success on the merits as to all claims even if those claims included allegations of conduct not protected under the anti-SLAPP statute. We reject these contentions. The court appropriately analyzed the issues and distinguished protected from unprotected activities in evaluating Hulett's anti-SLAPP motion. There was no error. We therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Respondents and Hulett were neighbors in a residential area in Encinitas. Hawk has owned the home in which she and Miller lived since 2003. She remains the owner, but Respondents currently do not reside in the home.

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

Around June 30, 2016, Respondents' contractors spotted a man similar in appearance to Hulett taking photographs of Respondents' home. Shortly thereafter, Respondents received a letter from the City alleging that they were engaged in unpermitted construction of the residence. The City investigated the complaint and took no further action.

On August 28, 2016, Respondents hosted a back to school social gathering for their children, the children's friends, and parents. Shortly after the gathering began, Hulett "barged into" Respondents' home, cursing and shouting that a car had to be moved from in front of his driveway. Hulett took an aggressive posture toward Hawk, stating that he was told the car that needed to be moved belonged to Hawk's mother. Miller tried to defuse the situation, but Hulett continued to curse and shout "in a menacing and loud tone." Hulett finally agreed to leave Respondents' home, and Miller moved the car Hulett claimed was in front of his driveway. However, the car of which Hulett complained was not blocking Hulett's driveway.

The next day, Respondents called the Encinitas Sheriff's Department to complain about Hulett's conduct. A deputy informed Respondents that they could file a restraining order.

Subsequently, on multiple occasions, Hulett stood near Respondents' home and "glared" at the home "for long periods of time monitoring the activities inside or around" the home. On several occasions, Hawk was outside her home and noticed Hulett "glaring at her, looking up and down in short running shorts with what appeared to be an erect penis in a state of arousal. It appeared that [Hulett] was undressing Ms. Hawk with his eyes." The frequency and severity of Hulett's "visual assault" caused Hawk "great distress and made her feel uneasy and unsafe going outside of her residence

even to check her mail for fear that she would see [Hulett] and potentially be assaulted by him again."

Respondents suffered "severe emotional distress and feared for their safety at [their home] as a result of [Hulett] standing outside the [r]esidence, staring at them, monitoring their actions, and glaring at Ms. Hawk in a state of arousal."

Because of Hulett's actions, Respondents moved out of their Encinitas home. However, they needed to earn an income from that property, so they decided to rent it. To this end, they contracted with Outsite, Inc. (Outsite), a company that "takes diligent care of properties, conducts background checks on members, and ensures their tenants will be respectful to the [home] and the surrounding neighbors."

Upon discovering Respondents were using Outsite to rent their home, Hulett created and paid for an Outsite membership so he could view Respondents' home (Outsite does not permit public viewing of the houses it rents). After viewing Respondents' home on Outsite's website, Hulett filed a complaint with the City claiming Outsite's advertisement for Respondents' home did not correspond with the building records of the home. Specifically, Hulett complained that Outsite showed the house having five bedrooms while building records showed it only had three.

Respondents then received notice from the City with over 20 complaints for conducting unpermitted work on the home. Hulett was listed on the reported complaints.

Respondents were able to get the City's code enforcement complaints dismissed because the home had the number of bedrooms that corresponded with the rental advertisement with Outsite. However, Hulett was not finished filing complaints.

4

Around March 19, 2018, Hulett filed another complaint with the City alleging that Respondents were using their Encinitas home as a short-term rental without the necessary permits. In response, Miller and a representative of Outsite met with Hulett to discuss Hulett's concerns. After this meeting, Hulett agreed to contact Respondents directly with any concerns instead of making complaints to the City. As such, Hulett withdrew his most recent complaint with the City.

Despite this meeting with Hulett, Respondents experienced "severe emotional and financial harm" because of Hulett's complaints to the City. They believed that "at any moment," Hulett would "make more unsubstantiated complaints that could cause extreme financial hardship and emotional distress." In addition, Respondents' fear of Hulett's actions led them to terminate their contract with Outsite. They then rented their home to a new tenant who damaged the residence during the lease agreement.

Around June 2018, Respondents sent Hulett a letter asking him to stop harassing, stalking, and bullying Respondents. Hulett did not respond to the letter.

Around September 15, 2019, Respondents entered into a second contract with Outsite. At that time, Hulett was no longer living in his Encinitas home but had rented it to tenants. Before entering into the second contract with Outsite, Respondents informed Hulett's tenants that they intended to rent their home again. The tenants told Hulett of Respondents' plans.

Hulett then logged into his Outsite account and took a screenshot of the rental advertisement of Respondents' home. He called Respondents and "furiously told them that he was angry and very upset [Respondents] would go behind his back and tell his tenants that they were renting the [home] to

5

Outsite." Respondents assured Hulett there was nothing wrong with the rental advertisement and begged him not to file another complaint with the City.

Respondents alleged that Hulett began "his pattern of wrongful and offensive conduct" toward Respondents "when they adopted two special needs/high risk children from India, who are dark skinned." They further averred that Hulett engaged in similar conduct against other females and non-Caucasian people in the neighborhood. Respondents claim Hulett "has a pattern and practice of harassing and assaulting neighbors, and initiating improper administrative actions against neighbors and their properties for no proper or legal purpose, but solely to harass, annoy, and generally make neighbors' lives difficult." Also, Hulett has threatened to have cars towed and had cars towed although the cars were parked legally.

On September 19, 2020, Respondents filed a complaint in San Diego Superior Court against Hulett, consisting of 11 causes of action: (1) civil harassment; (2) civil stalking; (3) trespassing; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) intentional interference with contract; (7) intentional interference with prospective economic relationship; (8) negligent interference with prospective economic relationship; (9) intrusion into private affairs; (10) wrongful use of administrative proceedings; and (11) assault.

In response to the complaint, Hulett filed an anti-SLAPP motion, a demurrer, and a motion to strike. Regarding the anti-SLAPP motion, Hulett argued that the causes of action in the operative complaint arose out of protected activity, namely the filing of complaints with the City. Additionally, he insisted Respondents could not meet their burden of proving a probability of success on the merits as to each cause of action alleged. The

6

crux of Hulett's argument was that all the causes of action relied on the filing of complaints with the City and such conduct is privileged under Civil Code section 47.[2]

In opposing the anti-SLAPP motion, Respondents argued that the complaints Hulett made to the City were false and, thus, not protected under the anti-SLAPP statute. In addition, Respondents asserted Hulett's filings of complaints with the City was only incidental to the causes of action in the operative pleading. Therefore, because the causes of action presented mixed claims of protected and nonprotected activity, Respondents maintained the anti-SLAPP motion should fail.

After considering the papers and entertaining oral argument, the court granted in part and denied in part Hulett's anti-SLAPP motion. Accordingly, the court struck the entire sixth (intentional interference with contract) and tenth (wrongful use of administrative proceedings) causes of action as well as several allegations concerning the filing of complaints with the City.

The court sustained in part and overruled in part Hulett's demurrer, only sustaining the demurrer with leave to amend as to the eleventh cause of action (assault). The court also granted the motion to strike without leave to amend only as to the allegations regarding the school related social gathering on August 28, 2016 because claims stemming from that event were time-barred. The court denied the rest of Hulett's motion to strike.[3]

---

[2] Hulett did not specifically address the trespass cause of action in his anti-SLAPP motion.

[3] Neither the demurrer nor the motion to strike are before this court. We briefly discuss them to provide context in addressing Hulett's anti-SLAPP motion.

7

Hulett timely appealed the portion of the court's order related to the anti-SLAPP motion.

DISCUSSION

"A SLAPP suit is a 'meritless lawsuit "filed primarily to chill the defendant's exercise of First Amendment rights." ' [Citation.] California's anti-SLAPP statute allows a defendant to move to dismiss 'certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity.' [Citation.]" (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 613.) The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United State Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

A court conducts a two-step analysis when ruling on a special motion to strike under the anti-SLAPP statutory framework. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

To make a showing under the first prong, a defendant need only establish a prima facie case that his alleged actions fell into one of the categories listed in section 425.16, subdivision (e). (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 314.) He may do so by identifying the allegations of protected

8

activity from the complaint and the claims for relief supported by them. (See *Baral*, *supra*, 1 Cal.5th at p. 396.)

In cases involving allegations of both protected and unprotected activity, a plaintiff must establish a probability of prevailing on any claim for relief based on the allegations of protected activity, and if the plaintiff does not do so, that claim and its corresponding allegations must be stricken. (*Baral*, *supra*, 1 Cal.5th at p. 395.) The Supreme Court has described the process in cases in which both protected and unprotected conduct is alleged as a basis for the cause of action as follows:

> "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing."

(*Id.* at p. 396.)

"*Baral* adopted a permissive approach: 'the Legislature's choice of the term 'motion to strike' reflects the understanding that an anti-SLAPP motion, like a conventional motion to strike, may be used to attack part of a count as pleaded.' [Citation.]" (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 589, quoting *Baral*, *supra*, 1 Cal.5th at p. 393.)

9

Thus, an anti-SLAPP motion may be used to "attack an entire pleading, such as a complaint, and various subparts of a pleading, such as a cause of action or pleaded count, as well as component paragraphs, words or phrases." (*Okorie*, at p. 589.)

We review anti-SLAPP motions de novo. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727.) We consider the pleadings and supporting and opposing affidavits, " ' "accept[ing] as true the evidence favorable to the plaintiff [citation] and evaluat[ing] the defendant's evidence only to determine if it has defeated that submitted by plaintiff as a matter of law." ' " (*Ibid.*) We "do[ ] not weigh evidence or resolve conflicting factual claims. [Our] inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral*, *supra*, 1 Cal.5th at pp. 384-385.)

Here, as a threshold matter, we note the limited nature of the issue presented on appeal. Hulett claims that the trial court erred by not requiring Respondents to prove the probability of success on the merits as to all causes of action not just the sixth and the tenth causes of action. That is the only issue before us. (Cf. *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913 ["the appellant must frame the issues for us"].) Neither Hawk nor Miller appealed any portion of the court's order. Thus, to the extent they argue in the respondents' brief that the court erroneously concluded Hulett's complaints to the City were protected conduct, a review of that determination is beyond the scope of the instant matter.[4] (Cf. *Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 [" ' "review is limited to the issues

---

[4] Respondents argue we should dismiss Hulett's appeal because he did not comply with certain court rules. We summarily reject this argument and address Hulett's appeal on the merits.

10

which have been adequately raised and briefed" ' "].) With the focus of this appeal established, we turn to Hulett's contention.

In the instant matter, Hulett claims each cause of action in the operative complaint is based on his filing of complaints with the City— conduct that the superior court determined was protected under section 425.16. Further, he contends the allegations of other wrongful, unprotected conduct merely provide context and cannot serve as allegations supporting the various causes of action. As such, the court needed to evaluate each cause of action under the second step of the anti-SLAPP analysis. In contrast, Respondents maintain Hulett's filing of the complaints with the City was only incidental to each cause of action. To this end, Respondents insist "[t]he 'overall thrust' of . . . [their] causes of action is Mr. Hulett's improper harassment, stalking, and intimidation, not any protected activity."

In the general allegations of the operative complaint, Respondents allege the following wrongful conduct: Hulett "trespassed onto [Respondents'] residence to verbally harass and bully [Respondents]"; Hulett "trespassed onto [Respondents'] [r]esidence to take photographs"; Hulett "intentionally interfered with numerous contracts and lease agreements [Respondents] were engaged in with third parties concerning the [r]esidence, forcing [Respondents] to terminate such contracts early and forego prospective contracts and income because of [Hulett's] harassing conduct towards [Respondents]"; Hulett "filed multiple formal complaints with the [C]ity . . . [and] [t]he . . . complaints . . . have either been dismissed by the [C]ity . . . after investigation or withdrawn by [Hulett]"; Hulett "intentionally and purposefully bullied, harassed, stalked, and intimidated [Respondents], thereby disturbing [Respondents'] privacy and quiet use and enjoyment of the

11

[r]esidence on multiple occasions"; Hulett "on multiple occasions, stood near [Respondents'] [r]esidence and glared at their [r]esidence for long periods of time monitoring their activities"; and "[o]n several occasions, Ms. Hawk was outside the [r]esidence and noticed [Hulett] glaring at her up, looking her up and down in running shorts with what appeared to be an erect penis in a state of arousal."[5]  These allegations were incorporated into each cause of action alleged in the operative complaint in boiler plate fashion.

In addition to incorporating by reference the general allegations, each cause of action in the operative complaint included specific allegations.  For example, in Respondents' first cause of action for civil harassment, they allege Hulett "committed unlawful violence on [Respondents] because he stalked, observed, and watched [Respondents'] every movement."  They also specifically repeated the allegations that Hulett watched Hawk "in what appeared to be a state of arousal and appeared to be undressing her with his eyes."  In addition, Respondents alleged Hulett "continually filed numerous unsubstantiated complaints against [Respondents]."

Harassment is defined as unlawful violence, a credible threat of violence, or knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  (§ 527.6, subd. (b)(3).)  Hulett contends that after the allegations regarding the filing of complaints with the City are stricken, the only conduct that remains is that he harassed Hawk " 'with his eyes.' "  Further, he asserts that this allegation is insufficient to serve as the basis of

---

[5]    The operative complaint also included detailed allegations about an event on August 28, 2016, in which Hulett came onto Respondents' property uninvited and yelled at Respondents and their guests.  The court struck these allegations as time-barred.  Consequently, we do not discuss these assertions in considering the issue before us.

12

a civil harassment claim because there are no allegations when the act allegedly occurred or if the conduct is likely to occur in the future. In support of his position, Hulett points out that the superior court overruled his demurrer as to the civil harassment cause of action "*solely* on the ground that [Respondents] alleged, 'future harassment is likely to occur.'" However, he notes that Respondents did not provide any evidence of any conduct that was likely going to occur again in the future. In making this argument, Hulett conflates the purpose of a demurrer with the purpose of an anti-SLAPP motion.

A demurrer merely tests the legal sufficiency of a complaint. (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.) Thus, the overruling of most of the demurrer here shows that the court believed the allegations in the operative complaint stated valid causes of action against Hulett. Further, we note that the court considered Hulett's demurrer in conjunction with the anti-SLAPP motion and motion to strike. As such, it concluded the demurrer was moot as to the sixth and tenth causes of action, which it struck in their entirety per Hulett's anti-SLAPP motion.

In comparison to a demurrer that addresses the validity of the allegations in a complaint, "[t]he anti-SLAPP statute enables defendants to quickly terminate meritless actions against them that are based on their constitutionally protected rights to speak freely and petition for redress of grievances. [Citation.] It allows litigants to file a special motion to strike " ' " 'at an early stage,' " ' " in which the trial court uses a " ' " 'summary-judgment-like procedure' " ' " to evaluate claims. [Citation]" (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 147-148, fn. omitted.) When the plaintiffs assert a mixed cause of action, the plaintiffs must establish a probability of prevailing based only on the protected activity. (*Baral*, *supra*, 1 Cal.5th at

13

pp. 392, 395-396; *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1171 (*Sheley*).) The allegations of unprotected activity are disregarded. (*Baral*, at p. 396; *Sheley*, at p. 1171.) The anti-SLAPP motion does not otherwise test the sufficiency of the allegations of unprotected activity and whether such allegations state valid causes of action. That is the role of a demurrer. (See *Holiday Matinee, Inc. v. Rambus, Inc.*, *supra*, 118 Cal.App.4th at p. 1420.)

Here, Respondents' civil harassment claim is clearly based on protected conduct (the filing of complaints with the City) and unprotected conduct (stalking, observing, watching, and leering). Hulett's argument challenging the superior court's order on the anti-SLAPP motion is not actually that the unprotected conduct cannot separately state a claim for civil harassment but that the allegations based on the unprotected conduct were insufficient to state a valid claim and Respondents did not provide evidence to show a probability of success on the merits as to the unprotected allegations. As to the former argument, the superior court rejected this assertion when it overruled Hulett's demurrer as to the civil harassment claim. An order overruling a demurrer is not directly appealable. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912-913.) And Hulett may not attack the court's ruling on demurrer through an appeal of his anti-SLAPP motion. Regarding the latter argument, Respondents do not have to show a probability of success on the merits as to the unprotected conduct. (See *Baral*, *supra*, 1 Cal.5th at p. 396; *Sheley*, *supra*, 9 Cal.App.5th at p. 1171.) And we agree with the superior court that the allegations of unprotected conduct are more than just merely incidental or contextual. They comprise a separate basis on which Respondents allege a valid cause of action. As such, they are beyond the scope of an anti-SLAPP motion. (See *Baral*, at p. 396; *Sheley*, at p. 1171.)

14

Hulett's challenge as to the second cause of action for civil stalking is similar to his argument against the first cause of action. In support of the second cause of action, Respondents allege the following wrongful conduct: Hulett "followed and placed [Respondents] under surveillance, took photographs of [Respondents'] [r]esidence, [Respondents'] contractors, and [Respondents]"; Hulett stood outside of Respondents' home and would stare at and monitor them; Hulett watched Hawk "in what appeared to be a state of arousal and appeared to be undressing her with his eyes." They also allege that Hulett engaged in stalking.

Hulett brushes aside these averments in arguing that, by incorporating previous allegations of filing complaints with the City, the unprotected conduct alleged in the civil stalking cause of action became " 'conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest' " under section 425.16, subdivision (e)(4). We disagree.

We read nothing in section 425.16 that allows a defendant to engage in distinct, tortious conduct without consequence as long as he or she claims that it was in pursuit of a constitutionally protected right. In other words, even if Hulett believed that Respondents were violating some city code, the anti-SLAPP statute does not empower Hulett to investigate those violations however he sees fit. He still must be mindful of the law and Respondents' rights. He cannot stalk or harass Respondents. He cannot trespass on

15

Respondents' property.[6]  In short, the anti-SLAPP law does not generally allow defendants to commit various torts by claiming the wrongful actions were ultimately in pursuit of some constitutional right.

Hulett makes similar arguments as to the remaining causes of action as he does to the first two, which we address in cursory fashion. Respondents' claim for intentional infliction of emotional distress is based on Hulett filing complaints with the City as well as trespassing on Respondent's property and standing outside of Respondents' home in an apparent state of arousal while staring at Hawk.  Similarly, Respondents' claim for negligent infliction of emotional distress is based on Hulett, on multiple occasions, leering at Hawk while aroused.  In support of their causes of action for both intentional and negligent interference with prospective economic advantage, Respondents allege Hulett threatened to "improperly report" Respondents to the City, "verbally intimated and bullied" Respondents, and filed "unsubstantiated complaints" with the City.  Additionally, Respondents alleged Hulett intruded into their private affairs by standing and staring directly in front of Respondents' home to stalk them and monitor movements in the home and taking multiple photographs of their home.  Despite these

---

6    In his anti-SLAPP motion filed with the superior court, Hulett did not argue that the trespass cause of action should have been stricken under the anti-SLAPP law.  Because he did not challenge the trespass cause of action below, he cannot do so on the first time on appeal.  (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["arguments raised for the first time on appeal are generally deemed forfeited"].)  Further, even if we addressed the merits of Hulett's argument here, we note he claims that, if he trespassed at all, it was to investigate code violations or issues of public interest, and, as such, his actions would constitute protected conduct.  Not so.  Again, the anti-SLAPP law does not transform the tort of trespass into protected conduct because Hulett is searching for evidence that Respondents have committed some wrong.  The anti-SLAPP statute provides a defendant with a shield, not a sword.

16

torts being based on mixed conduct or simply unprotected conduct, Hulett focuses solely on the filing complaints with the City, claiming that action is the real basis of each claim while characterizing the other allegations of untoward acts as merely providing context. We reject these contentions. Respondents have alleged other, unprotected conduct to form the basis of each of the challenged causes of action. We simply cannot ignore these allegations.

Nor do we require plaintiffs to provide evidence to support the allegations of unprotected conduct within the anti-SLAPP context. Consequently, we are not concerned by Hulett's argument that the evidence Respondents' provided contradicts some of the allegations or does not support the allegations of unprotected conduct. As *Baral* informs us, when the plaintiffs assert a mixed cause of action, the plaintiffs must establish a probability of prevailing based only on the protected activity. (*Baral*, *supra*, 1 Cal.5th at pp. 392, 395-396; *Sheley, supra,* 9 Cal.App.5th at p. 1171.) They do not have the same burden as to the allegations of unprotected conduct. Instead, in considering an anti-SLAPP motion, the court simply disregards those allegations. (*Baral*, at p. 396; *Sheley*, at p. 1171.) Alternatively stated, a court can strike the meritless allegations of protected conduct while leaving allegations of unprotected conduct alone. (*Baral*, at pp. 393-394.) The superior court took this careful approach in evaluating Hulett's anti-SLAPP motion.

Moreover, the fact that Respondents included boiler plate language in each cause of action incorporating the previous allegations does not change our analysis here. In this sense, Hulett appears to be challenging the sufficiency of the allegations in the operative complaint. However, he challenged those allegations through his demurrer and motion to strike. The

court considered those arguments and predominately found them wanting. Hulett cannot use an appeal of the order on his anti-SLAPP motion as mechanism for this court to address an otherwise unappealable order.[7] (See (*San Diego Gas & Electric Co. v. Superior Court, supra*, 13 Cal.4th 893, 912-913; *Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 641; cf. *Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 207.)

DISPOSITON

The order is affirmed. Respondents are awarded their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

---

[7] We do not address the sixth cause of action (intentional interference with contract), the tenth cause of action (wrongful use of administrative proceedings), or the eleventh cause of action (assault). The court found that the sixth and tenth cause of actions were entirely based on Hulett's filing of complaints with the City. Alternatively stated, there were no allegations of unprotected conduct in either of those causes of action. Regarding the eleventh cause of action, Hulett concedes that cause of action is not based on protected conduct. Further, the superior court addressed the eleventh cause of action in its order on Hulett's demurrer and motion to strike. Nothing in this opinion affects the court's order on the demurrer or motion to strike.