Filed 3/20/17

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----


| | |
|---|---|
| NANCY LEE SHELEY, | C077747 |
| Cross-complainant and Respondent, | (Super. Ct. No. 159961) |
| v. | |
| LINDA HARROP et al., | |
| Cross-defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Butte County, Sandra L. McLean, Judge.  Affirmed as modified.

Titus K. Lin for Cross-defendants and Appellants.

Gregory P. Einhorn and Virginia L. Gingery for Cross-complainant and Respondent.


1

Richard G. Sheley (the decedent) formed and operated a corporation, George's Pest Control, Inc. (the corporation). Cross-complainant/respondent Nancy Lee Sheley (respondent), the decedent's wife at the time of his death, owns a 25 percent share in the corporation. After the decedent's death in 2011, cross-defendants/appellants Linda Harrop and Valerie Richard (appellants), decedent's daughters from a prior marriage, together came to own a 75 percent share in the corporation. After appellants assumed control, the corporation commenced an action against respondent. An amended complaint added appellants as plaintiffs. Respondent filed a cross-complaint against appellants. Appellants filed an anti-SLAPP special motion to strike the cross-complaint. (Code Civ. Proc., § 425.16.)[1] The trial court granted the motion as to respondent's fourth cause of action, sounding in intentional infliction of emotional distress, and otherwise denied the motion.

On appeal, appellants assert that the trial court erred in denying their special motion to strike the first, second, and third causes of action in respondent's cross-complaint because the alleged conduct arose out of their constitutional right to petition, and respondent could not establish a probability of prevailing on the merits. Alternatively, appellants contend the trial court should have granted their motion as to the specific allegations involving protected activity in the first, second, and third causes of action.

We conclude that certain of respondent's allegations in each of the remaining three causes of action arise out of protected activity. We further conclude that, as to those particular allegations which are based on protected activity, respondent failed to establish that the claims were legally sufficient and factually substantiated. Therefore, we modify the trial court's order by granting appellants' motion to strike the specific claims founded

---

[1] Undesignated statutory references are to the Code of Civil Procedure in effect at the time of the action.

2

on allegations of protected activity in each remaining cause of action in the cross-complaint.

As so modified, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Underlying Lawsuit

According to appellants' complaint, the decedent formed the corporation, a pest control service provider, in 1975. The decedent managed the corporation, and owned it jointly with his then-wife, appellants' mother, Nina Sheley (Nina). Nina died in 1981 and left her shares in the corporation in trust for the benefit of the appellants, with the decedent serving as trustee. Shortly after Nina's death, the decedent met and married respondent. The decedent and respondent managed the corporation together until the decedent died on March 7, 2011. In 2001, the corporation sold its assets to Clark Pest Control of Stockton, Inc. (Clark), for a purchase price believed to be $3,000,000. After the sale, the corporation continued to exist to receive recurring payments related to the sale of the corporate assets. The complaint alleged that, during the time between when the decedent married respondent and the decedent's death in 2011, the decedent and respondent managed the corporation notwithstanding the fact that they did not own a majority interest. Following the decedent's death in 2011, appellants received Nina's shares of the corporation from the trust, as well as the decedent's remaining shares pursuant to his will. As a result, appellants each held 187.5 shares, affording them together, a 75 percent ownership interest in the corporation. Respondent held a 25 percent ownership interest.

According to the complaint, following the decedent's death, respondent had sole possession of the corporate records. Appellants attempted to obtain the corporate records from respondent, but respondent was uncooperative and only produced the records after months of requests. The complaint alleged that, in reviewing the records furnished by respondent, appellants discovered a number of suspicious financial transactions.

3

The complaint named the corporation as plaintiff and asserted causes of action to recover damages for conversion, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty based on actions taken by respondent in cooperation with the decedent. An amended complaint added appellants as plaintiffs and asserted a fourth cause of action for the imposition of a constructive trust and for an accounting.

## Respondent's Cross-Complaint

Respondent filed a cross-complaint, denying the material allegations in the complaint and asserting four causes of action against appellants.[2] In the first cause of action, to recover damages for breach of fiduciary duty, respondent asserted that appellants breached their fiduciary duty to her by "paying themselves excessive salaries, by wrongfully converting corporate assets, *by filing and maintaining a frivolous lawsuit against* [*her*] and by failing to make pro-rata disbursements to [her] as a minority shareholder of the corporation." (Italics added.)  In the second cause of action, to recover damages for conversion, respondent asserted that appellants "have willfully, intentionally and wrongfully converted corporate assets . . . , all to [respondent]'s direct and proximate detriment, and converted them to their own use by, among other things, paying themselves excessive salaries, making disbursements to themselves without making pro-rata disbursements to [respondent], and *by wrongfully utilizing corporate assets to fund the above-captioned frivolous lawsuit brought in bad faith against* [*respondent*]."  (Italics added.)  In the third cause of action, to recover damages for negligence, respondent asserted that appellants had breached the duty they owed to her "by, among other things, failing to make timely disbursements to [her] as a minority shareholder . . . , *by*

---

[2] Consistent with the allegations in the complaint against her, respondent asserted in her cross-complaint that, following the purchase of corporate assets by Clark, the corporation ceased to exist as an ongoing business, and only remained in existence as a vessel for receipt and distribution of the continuing payments from Clark.

4

*wrongfully depleting and wasting corporate assets to fund the instant litigation against* [*her*] *without any reasonable justification*, and by paying themselves excessive salaries as officers of [the corporation], thereby further wasting corporate assets." (Italics added.) In the fourth cause of action, to recover damages for intentional infliction of emotional distress, respondent alleged that appellants' conduct was outrageous and caused her to suffer severe emotional distress.

## Special Motion to Strike

Appellants filed a special motion to strike the cross-complaint pursuant to section 425.16. Appellants asserted that the act of filing a lawsuit was a protected activity within the meaning of section 425.16. Appellants further asserted that the filing of the lawsuit was a "core component[]" of the cross-complaint, and observed that allegations related to the filing and maintaining the lawsuit appeared in each cause of action. While appellants acknowledged that each cause of action in the cross-complaint contained allegations of unprotected activity, they argued that the protected activity was a significant portion of each cause of action. Appellants asserted that where a cause of action is founded in both protected and unprotected activity, the entire cause of action is subject to being struck pursuant to an anti-SLAPP motion unless the protected activity was " 'merely incidental' " to the unprotected activity. Appellants further asserted that the protected activity in the cross-complaint could not be characterized as merely incidental to any of the causes of action. Appellants contended that they had made their threshold showing of demonstrating that the cross-complaint's causes of action arose out of protected activity. Therefore, each cause of action in the cross-complaint must be struck unless respondent could demonstrate a probability of prevailing on the merits.

According to appellants, respondent could not possibly meet her burden. Appellants asserted that the act of filing a lawsuit alleging any tort other than malicious prosecution was subject to absolute privilege under Civil Code section 47, subdivision (b). Thus, as to asserted causes of action premised on protected activity,

5

appellants argued that respondent could not demonstrate a probability of prevailing on the merits because the conduct on which she based her claims was privileged.

## Respondent's Opposition

Respondent asserted that appellants had failed to meet their threshold burden of demonstrating that the cross-complaint arose from acts undertaken in furtherance of a protected activity. Respondent drew a distinction between activity that constitutes evidence related to liability and liability actually based on protected activity. Respondent asserted that her allegations related to appellants' alleged misuse of corporate assets to fund the litigation were not the same as alleging that appellants were liable for the very act of filing the underlying lawsuit. According to respondent, appellants' filing of the lawsuit was not the basis underlying her causes of action. Rather, the specific allegations which formed the basis for the cross-complaint involved appellants' wrongful withholding of disbursements from her as a minority shareholder. Thus, having failed to establish that the cross-complaint was a "SLAPP suit," appellants failed to make their threshold showing.

Respondent further asserted that, even if appellants met their prima facie burden, she could demonstrate a probability of prevailing on the merits. Based on *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 (*Mann*), respondent contended that, when a cause of action raises both protected and unprotected activity, an anti-SLAPP motion should be denied when the opposing party shows a probability of prevailing on any part of the cause of action.[3] Respondent reiterated her factual

---

[3] *Mann* was disapproved in part in *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396, fn. 11 (*Baral*). As will be discussed in part III. of the Discussion, *post*, the California Supreme Court rejected the *Mann* rule and stated that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Baral*, at p. 393.)

6

allegations, as supported by her exhibits, and asserted that the facts alleged would support a judgment in her favor on each of the cross-complaint's four causes of action.

Respondent further asserted that, because the causes of action in her cross-complaint did not arise from protected activity, appellants' privilege defense asserted pursuant to Civil Code section 47, subdivision (b), was inapplicable. According to respondent, none of the facts alleged included retaliation for filing a lawsuit against her. She asserted that her causes of action would lie whether or not appellants commenced the underlying lawsuit against her.

With her opposition papers, respondent submitted a declaration as well as exhibits in support of her factual allegations. The exhibits included share certificates; the September 28, 2001, agreement of purchase and sale of assets between the corporation as seller and Clark as buyer, which contemplated an initial cash payment of $1,000,000 and an additional sum of $815,712.28 to be paid over 180 installment payments, and which included a covenant not to compete; a payment amortization schedule detailing the payments to be made by Clark to the corporation; a spreadsheet, prepared by respondent from corporate records, detailing disbursements paid from the corporation to her, appellants, and the decedent during the decedent's lifetime; Nina's last will and testament; and corporate profit-and-loss statements for 2012 and 2013.

**Appellants' Reply**

In their reply, appellants asserted that each of the causes of action in the cross-complaint arose, at least in part, from the protected activity of filing a lawsuit against respondent. They further asserted that the protected activity was not merely incidental to the causes of action. Thus, according to appellants, the entirety of each cause of action fell within the ambit of section 425.16. Appellants disputed respondent's contention that the filing of the underlying lawsuit did not form the basis for the cross-complaint, observing that the background facts and each cause of action referred to the filing and maintaining of the underlying lawsuit. Relying on the language in section 425.16,

7

subdivision (e)(4), which states that protected activity includes "any other conduct in furtherance" of the exercise of the right of petition, appellants argued that, contrary to respondent's position, funding the underlying lawsuit was a protected activity.

Appellants further asserted that respondent had failed to meet her burden of demonstrating a probability of prevailing on the merits of her causes of action. Appellants contended that much of the evidence on which respondent relied was inadmissible. They also contended that much of the conduct alleged by respondent as giving rise to her claims was protected from judicial scrutiny under the business judgment rule, and that the decision to issue disbursements to shareholders is a matter within the discretion of the board of directors. Appellants argued that respondent failed to submit any admissible evidence to support a claim that they acted in bad faith or with fraudulent intent. With regard to the conversion cause of action, appellants asserted that respondent's financial interest in the corporation was limited to share ownership, and shareholders do not own corporate property or have any immediate right to receive corporate profits. Thus, respondent could not demonstrate a right of immediate possession.

Appellants further asserted that, even if the trial court concluded that respondent satisfied her burden regarding all unprotected activity, it should nonetheless strike all allegations in the cross-complaint concerning protected activity.

**Oral Argument in the Trial Court**

After issuing a tentative decision denying the motion in major part, the trial court heard oral argument. Appellants argued that the trial court employed an incorrect standard in its tentative decision. According to appellants, the correct standard in determining whether allegations of protected activity in a cause of action will survive a challenge under the anti-SLAPP statute is whether the protected activity is merely incidental to the cause of action, whereas in the tentative decision, the trial court denied the motion on the ground that there were substantial allegations of unprotected activity.

8

According to appellants, the correct approach was not to look at what the unprotected conduct was, but rather to consider the protected conduct and inquire whether that conduct was merely incidental to the cause of action. If merely incidental, then the cause of action survives. Appellants noted that the cross-complaint alleged the filing and maintaining of the underlying lawsuit as background facts, and each of the first three causes of action recited the filing and maintaining of the underlying lawsuit as "liability-creating acts." Appellants suggested that the cross-complaint combined unprotected conduct with protected conduct in order to prevent them from asserting their rights under the anti-SLAPP statute. Appellants argued that, based on the nature of the pleadings, the protected activity could not be deemed merely incidental to the causes of action.

Appellants also disagreed with the tentative decision's conclusion that the "lawsuit-related claims" pertained to mismanagement of funds rather than the filing and maintaining of the underlying lawsuit. Appellants emphasized that the anti-SLAPP statute is to be construed broadly and further noted that section 425.16 expressly states that not only are statements made in the exercise of the right of petition protected, but conduct in furtherance of the right of petition is also protected. In this regard, appellants noted that the corporation could not exercise its right of petition if it could not pay for the lawsuit.

Respondent agreed with the tentative decision. In response to appellants' argument that she artfully pleaded the cross-complaint to avoid anti-SLAPP consequences, respondent disagreed with the assertion that allegations concerning the filing and maintaining of the underlying lawsuit should have been pleaded separately from the other allegations, as such allegations could not independently form the basis for liability. Respondent further asserted that appellants provided no support for the argument that the purported mismanagement of funds is a protected activity.

9

The trial court stated that there appeared to be "a tension between the anti-SLAPP [scheme] and filing cross-complaints that are related to the activities . . . between the parties." The court opined that it had "to draw the line somewhere." The court also stated that there appeared to be a dispute as to whether the corporation could file a lawsuit to protect corporate assets, or whether the corporation, in paying for shareholders or officers to pursue the lawsuit, may be committing mismanagement. The court concluded that there "seems to be sufficient assertions there to allow that to go forward without it being anti-SLAPP."

## The Trial Court's Ruling

The trial court granted appellants' special motion to strike as to the cross-complaint's fourth cause of action which was to recover damages for intentional infliction of emotional distress.[4] However, the trial court denied the special motion to strike as to the remaining three causes of action, concluding that the cross-complaint "alleges substantial wrongful activity apart from the allegations regarding filing of this litigation; in addition, the allegations regarding filing of the lawsuit have to do with mismanagement of funds in allegedly spending them on unfounded litigation."

## DISCUSSION

## I. Appellant's Contentions

On appeal, appellants contend that the trial court erred in denying their special motion to strike as to the first, second, and third causes of action of the cross-complaint. Appellants assert that the filing of the underlying lawsuit was protected activity, the allegations that they did so are a material component of each of respondent's causes of

---

[4] Appellants advanced additional arguments regarding the fourth cause of action sounding in intentional infliction of emotional distress. Because the trial court granted that part of appellants' motion to strike the fourth cause of action and respondent did not cross-appeal from the order asserting that the trial court erred in striking that cause of action, we need not discuss the fourth cause of action any further.

10

action, and they therefore made their threshold showing that the cross-complaint complained of protected activity. Appellants argue that the trial court erred in denying their motion on the ground that the cross-complaint's allegations regarding the filing of the underlying lawsuit related primarily to the use of corporate assets to fund the lawsuit; they contend that there is no meaningful distinction between using assets to file a lawsuit and filing a lawsuit, and that the former constitutes " 'any conduct in furtherance' " of the right of petition within the meaning of section 425.16, subdivision (e)(4). They further assert that respondent failed to demonstrate a probability of prevailing on the merits.[5]

We conclude that each cause of action contains allegations of both protected and unprotected activity, and that the protected activity is not merely incidental to the causes of action. We further conclude that the respondent failed to demonstrate that the claims based on protected activity were legally sufficient and factually substantiated. Therefore, we conclude that those claims that are based on allegations of protected activity must be struck from the cross-complaint.

## II. Applicable Legal Principles

### A. Section 425.16 Special Motions to Strike

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective

---

[5] Appellants also assert that the trial court abused its discretion in overruling certain of their evidentiary objections. Appellants filed 14 evidentiary objections to the evidence submitted by respondent in opposition to their special motion to strike. The trial court sustained appellants' evidentiary objection Nos. 11 through 14, but overruled objections 1 through 10. Because we conclude that the trial court should have granted appellants' special motion to strike to the extent of striking the allegations based on protected activity, we further conclude that appellants' contentions concerning the evidentiary objections ultimately have been rendered moot. Our consideration, *post*, of whether respondent succeeded in demonstrating a probability of prevailing on her claims is based only on the evidence considered by the trial court.

11

economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' " (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson*).)

"In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute. (§ 425.16, subd. (a).) The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson*, *supra*, 49 Cal.4th at p. 21.)

The anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral, supra*, 1 Cal.5th at p. 384.) The statute applies to "cause[s] of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech* under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1), italics added.)[6] As used in the statutory scheme, " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or

---

[6] To avoid confusion, our high court in *Baral* referred to "the proper subject of a special motion to strike as a 'claim' " instead of a " 'cause of action.' " (*Baral, supra*, 1 Cal.5th at p. 382.) We shall do the same.

judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

A special motion to strike involves a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral, supra*, 1 Cal.5th at p. 384.) "[H]owever, it is not enough to establish that the action was filed in response to or in retaliation for a party's exercise of the right to petition. [Citations.] Rather, the claim must be *based on* the protected petitioning activity." (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 804 (*Bergstein*), citing *Navellier v. Sletten* (2003) 29 Cal.4th 82, 89 (*Navellier*).) "[I]f the defendant does not meet its burden on the first step, the court should deny the motion and need not address the second step." (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266 (*Tuszynska*).)

Second, "[i]f the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384.) The plaintiff must do so with admissible evidence. (*Kreeger v. Wanland* (2006) 141 Cal.App.4th 826, 831.) "We decide this step of the analysis 'on consideration of "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).) Looking at those affidavits, "[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff." ' " (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 378-379 (*Burrill*), disapproved in part in *Baral,* at p. 396, fn. 11.) This second step has been described as a " 'summary-judgment-like procedure.' " (*Baral*, at p. 384.) A court's second step "inquiry is limited to whether the [opposing party] has stated a legally sufficient claim and made a prima facie factual

13

showing sufficient to sustain a favorable judgment.  [The court] . . . evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law."  (*Id*. at pp. 384-385.)  "Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier, supra*, 29 Cal.4th at p. 89.)

"On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step."  (*Tuszynska, supra*, 199 Cal.App.4th at pp. 266-267.)

## B.  **"Mixed Claims" and** *Baral*

Each of the cross-complaint's first three causes of action involve "mixed claims"—claims that contain both allegations based on protected activity and allegations based on unprotected activity.  Therefore, we must address the manner in which such mixed claims should be addressed.

For some time, there was a split among the Courts of Appeal as to how to treat such mixed claims.  (See *Cho v. Chang* (2013) 219 Cal.App.4th 521, 526-527 [discussing the split among the courts].)  For instance, in *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751 (*Singletary*), a majority of Division Two of the Court of Appeal for the Fourth Appellate District concluded that causes of action may be parsed, meaning that courts may strike those portions of a cause of action which arise from protected activity and on which the nonmoving party has not established a probability of prevailing, while leaving undisturbed the remaining allegations within the same cause of action.  (*Id*. at pp. 772-773.)  The majority in *Singletary* relied, inter alia, on the California Supreme Court's decision in *Taus v. Loftus* (2007) 40 Cal.4th 683:  "From the *Taus* opinion, we learn 'that each challenged basis for liability must be examined individually to determine if the

14

plaintiff has demonstrated a probability of prevailing, and if the plaintiff has failed to do so, then that basis [and that basis alone must be] stricken from the plaintiff's pleading.' [Citation.]  In other words, *Taus* shows us that a portion of a cause of action may be stricken if it falls within anti-SLAPP protections." (*Singletary*, at p. 774.)  A primary rationale for the approach adopted by the majority in *Singletary* and other courts is that the alternative would allow litigants to circumvent the anti-SLAPP law by artfully pleading allegations based on unprotected activity in the same cause of action as allegations based on protected activity.  (E.g., *Cho*, at p. 527; *Singletary*, at p. 774.)[7]

Conversely, in *Mann, supra*, 120 Cal.App.4th 90, Division One of the Fourth Appellate District concluded that, "[w]here a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure." (*Id.* at p. 106.)  This court has previously followed *Mann*.  For example, this court has stated that, " '[i]f the [nonmoving party] "can show a probability of prevailing on *any part of* [*his or her*] *claim*, the cause of action is not meritless" and will not be struck; "once a plaintiff shows a probability of prevailing on any part of [his or her] claim, the plaintiff *has established* that [his or her] cause of action has some merit and the entire cause of action stands." ' " (*Burrill, supra*, 217 Cal.App.4th at p. 379.)  This court expressly stated that it agreed with Justice Richli's analysis in *Singletary* (see fn. 7, *ante*) and disagreed with the majority's holding in that case.  (*Burrill*, at p. 382.)

---

[7]  Dissenting from the relevant portion of *Singletary*, Justice Richli concluded that the majority's " 'slice and dice' approach—striking particular allegations, rather than an entire cause of action—violates Code of Civil Procedure section 425.16 (the SLAPP Act)." (*Singletary, supra*, 206 Cal.App.4th at p. 788 (conc. & dis. opn. of Richli, Acting P.J.).)  Justice Richli stated:  "The SLAPP Act authorizes a trial court to strike a 'cause of action.' (Code Civ. Proc., § 425.16, subd. (b)(1).)  It 'cannot be used to strike particular allegations within a cause of action.' " (*Singletary*, at p. 792 (conc. & dis. opn. of Richli, Acting P.J.).)

The parties' briefs addressed this split among the Courts of Appeal. As respondent pointed out, the California Supreme Court granted review in *Baral*, which presented this issue. (*Baral, supra*, 1 Cal.5th 376.) During the pendency of this appeal, our high court published its decision in *Baral*. The *Baral* court stated, "Typically, a pleaded cause of action states a legal ground for recovery supported by specific allegations of conduct by the defendant on which the plaintiff relies to establish a right to relief. If the supporting allegations include conduct furthering the defendant's exercise of the constitutional rights of free speech or petition, the pleaded cause of action 'aris[es] from' protected activity, at least in part, and is subject to the special motion to strike authorized by section 425.16(b)(1)." (*Baral*, at pp. 381-382.)

As for the burden of the party opposing an anti-SLAPP motion in the second step of the analysis, the *Baral* court stated, "[I]t is not the general rule that a plaintiff may defeat an anti-SLAPP motion by establishing a probability of prevailing on *any part* of a pleaded cause of action. Rather, the plaintiff must make the requisite showing as to each challenged claim that is based on allegations of protected activity. . . . [W]hen the defendant seeks to strike particular claims supported by allegations of protected activity that appear alongside other claims within a single cause of action, the motion cannot be defeated by showing a likelihood of success on the claims arising from unprotected activity." (*Baral, supra*, 1 Cal.5th at p. 392.) Our high court further stated that the "refusal to permit anti-SLAPP motions to reach distinct claims within pleaded counts undermines the central purpose of the statute: screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery." (*Ibid.*) The court agreed that the *Mann* rule rewarded artful pleading by allowing plaintiffs to avoid the consequences of the anti-SLAPP statute merely by the manner in which causes of action are pleaded, and stated that "application of section 425.16 cannot reasonably turn on how the challenged pleading is organized." (*Baral*, at p. 392.) Relying on the language of the anti-SLAPP statute, the *Baral* court

16

emphasized that it is "the Legislature's desire to require plaintiffs to show a probability of prevailing on 'the claim' arising from protected activity, not another claim that is based on activity that is beyond the scope of the anti-SLAPP statute but that happens to be included in the same count." (*Id*. at p. 393.) Our high court reiterated that it is the defendant's activity allegedly giving rise to liability that is the focus of the anti-SLAPP scheme, not the manner in which the plaintiff pleads causes of action. (*Ibid*.) "It follows, then, that courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity." (*Ibid*.) The *Baral* court concluded that "the Legislature's choice of the term 'motion to strike' reflects the understanding that an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." (*Ibid*.) The court further specified that the term " 'cause of action' " in the anti-SLAPP statute "refers to claims for relief that are based on allegations of protected activity." (*Id*. at p. 396.) Thus, our high court disapproved of the *Mann* rule, and disapproved of other cases insofar as they interpreted *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811 (*Oasis*), as an endorsement of the *Mann* rule. (*Baral*, at p. 396 & fn. 11.)

But the *Baral* court emphasized, "[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16." (*Baral, supra*, 1 Cal.5th at p. 394.) Thus, "[a]llegations of protected activity that merely provide context, *without supporting a claim for recovery*, cannot be stricken under the anti-SLAPP statute." (*Ibid.*, italics added; see also *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183 (*Wallace*) [an alleged act is incidental to a claim only if the act is not alleged to be a basis for liability], disapproved on other grounds in *Baral*, at p. 396, fn. 11.)

The *Baral* court provided a summary of the showings required by section 425.16, subdivision (b), in mixed claims cases: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and

17

unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is struck. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral, supra*, 1 Cal.5th at p. 396.)

### III. Analysis

### A. Claims Arising from Protected Activity

"The filing of lawsuits is an aspect of the First Amendment right of petition" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*)), and thus is a protected activity under the anti-SLAPP statute. (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 872 (*Nunez*) [malicious prosecution]; *Wallace, supra*, 196 Cal.App.4th at pp. 1182-1193 [unlawful detainer].) Moreover, as appellants correctly assert, "litigation funding decisions" also constitute protected petitioning activity. (*Tuszynska, supra*, 199 Cal.App.4th at p. 271; see § 425.16, subds. (b)(1) [cause of action "arising from any act . . . in furtherance of the . . . right of petition or free speech . . . shall be subject to a special motion to strike, unless the court determines that the [nonmoving party] has established that there is a probability that [he or she] will prevail on the claim"], (e)(2) [act in furtherance of the right of petition or free speech includes "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law"], (e)(4) [act in furtherance of the right of petition or free speech includes "any other conduct in furtherance of the exercise of the constitutional right of petition"].) We agree

18

with appellants that, insofar as a cause of action is based on the payment of funds to maintain a lawsuit, this constitutes protected activity that will be subject to a special motion to strike pursuant to section 425.16 unless the opposing party can demonstrate a probability of prevailing on the claim.

In her first cause of action, to recover damages for breach of fiduciary duty, respondent asserted that appellants breached their fiduciary duty to her by "paying themselves excessive salaries, by wrongfully converting corporate assets, *by filing and maintaining a frivolous lawsuit against* [*her*] and by failing to make pro-rata disbursements to [her] as a minority shareholder of the corporation."  (Italics added.)

In the second cause of action, to recover damages for conversion, respondent asserted that appellants "have willfully, intentionally and wrongfully converted corporate assets of [the corporation], all to [respondent]'s direct and proximate detriment, and converted them to their own use by, among other things, paying themselves excessive salaries, making disbursements to themselves without making pro-rata disbursements to [respondent], *and by wrongfully utilizing corporate assets to fund the above-captioned frivolous lawsuit brought in bad faith against* [*respondent*]."  (Italics added.)

In the third cause of action, to recover damages for negligence, respondent asserted that appellants had breached the duties owed to her "by, among other things, failing to make timely disbursements to [respondent] as a minority shareholder . . . , *by wrongfully depleting and wasting corporate assets to fund the instant litigation against* [*respondent*] *without any reasonable justification*, and by paying themselves excessive salaries as officers of [the corporation], thereby further wasting corporate assets."  (Italics added.)

As can be seen by the italicized text, each of these three causes of action state claims involving allegations related to the filing and funding of the lawsuit against respondent.  Thus, each of these causes of action *describes* conduct constituting protected activity.  However, this is not the limit of the analysis on the first prong of the test.  We

19

must determine whether the claim actually *arises from* protected activity. (§ 425.16, subd. (b)(1); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669-670 (*Peregrine Funding*).) The critical point to establishing the "arising from" requirement is whether a plaintiff's claim itself was *based on an act* in furtherance of the defendant's right of petition or free speech. (*Navellier, supra*, 29 Cal.4th at p. 89; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; *Bergstein, supra*, 236 Cal.App.4th at p. 804; *Peregrine Funding*, at p. 670.) "In other words, 'the defendant's *act underlying the plaintiff's cause of action* must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Peregrine Funding*, at p. 670, quoting *City of Cotati*, at p. 78, first italics added.)

Also, as stated *ante*, where a cause of action alleges both protected and unprotected activity, assertions within a cause of action will not be subject to a special motion to strike where the protected conduct is " 'merely incidental' " or " 'collateral' " to the unprotected conduct. (*Baral, supra*, 1 Cal.5th at p. 394; *Peregrine Funding, supra*, 133 Cal.App.4th at p. 672.) "Allegations of protected activity that merely provide context, *without supporting a claim for recovery*, cannot be stricken under the anti-SLAPP statute." (*Baral*, at p. 394, italics added.) Thus, we must determine whether the alleged protected activity supports a claim for recovery.

Here, we conclude that the allegations of each remaining cause of action pertaining to protected activity are not merely incidental to respondent's alleged injuries. Within each cause of action, respondent alleges conduct by appellants that is *based* on protected activity and as set forth in the cross-complaint, supports a claim for recovery. These are not allegations that merely provide context. As we have noted, the protected activity allegations are: in the first cause of action, that appellants breached their fiduciary duty to her by "filing and maintaining a frivolous lawsuit against [her]"; in the second cause of action, that appellants were liable to her for conversion for "wrongfully utilizing corporate assets to fund the above-captioned frivolous lawsuit brought in bad

20

faith against [respondent]"; and, in the third cause of action, that appellants breached the duties owed to her and were therefore negligent "by, among other things, . . . wrongfully depleting and wasting corporate assets to fund the instant litigation against [respondent] without any reasonable justification." Thus, while it is clear that the other allegations in each of the causes of action do not arise out of protected activity, the quoted allegations indeed arose out of activity that is protected, specifically filing, maintaining, and funding a lawsuit.[8] (See generally *Soukup, supra*, 39 Cal.4th at p. 291; *Nunez, supra*, 241 Cal.App.4th at p. 872; *Tuszynska, supra*, 199 Cal.App.4th at p. 271; *Wallace, supra*, 196 Cal.App.4th at pp. 1182-1193; § 425.16, subd. (b).)

Respondent relies on *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265 (*Baharian-Mehr*) in arguing that any allegations in her cross-complaint related to protected activity are merely incidental to her causes of action, and therefore the causes of action do not arise out of protected activity. In *Baharian-Mehr*, the plaintiff commenced an action against his partners and the corporation they had set up. He alleged he had discovered financial mismanagement and wrongful expenditures. (*Id*. at pp. 268-270.) As asserted in the complaint, the alleged mismanagement and wrongful expenditures included: funds paid to a private investigator to watch former employees who had sued the corporation for wage and hour violations; continued payment of the manager's salary to one of the partner defendants after he quit his service as manager; thereafter hiring as manager the son of the former partner/manager, who failed to deposit receipts in the corporation's bank account; use of a corporate credit card and cash for nonbusiness expenses; failure to properly pay employees all wages and overtime due,

---

[8] In the trial court's order, the court stated that it was denying appellants' motion because, inter alia, "the allegations regarding filing of the lawsuit have to do with mismanagement of funds in allegedly spending them on unfounded litigation." We disagree with the court to the extent that it concluded that spending money to fund a lawsuit does not constitute protected activity within the meaning of the statutory scheme.

resulting in litigation; unnecessarily hiring political consultants for the moving defendant's personal gain; paying the moving defendant's personal attorney for a lawsuit he had filed on behalf of the corporation against the partner who had been the manager; and directing the corporation's accounting records to incorrectly reflect capital investments as loans. (*Id.* at pp. 269-270.) The plaintiff asserted "causes of action for accounting, preliminary and permanent injunctions, breach of fiduciary duty, constructive fraud, constructive trust, and declaratory relief." (*Id.* at p. 270.) One of the partners, Smith, filed a special motion to strike, citing as protected activity certain activities related to hiring attorneys and a private investigator in connection with wage and hour litigation and the subsequent complaint that the corporation filed against the partner who had served as the business manager. (*Id.* at pp. 270, 272.) The trial court denied the motion, ruling that " 'the gravamen of this case is a business dispute between owners and not activity protected by . . . the anti-SLAPP statute.' " (*Id.* at p. 270.)

In affirming the denial of the anti-SLAPP motion, the *Baharian-Mehr* court sought to determine whether the challenged claims arose from protected activity by examining the " '*principal thrust* or *gravamen* of a plaintiff's cause of action.' " (*Baharian-Mehr, supra*, 189 Cal.App.4th at p. 272.) The court stated, " 'We assess the *principal thrust* by identifying "[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim." [Citation.]' [Citation.] We keep in mind that '[i]n the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]' [Citation.] If the mention of protected activity is 'only incidental to a cause of action based essentially on nonprotected activity,' then the anti-SLAPP statute does not apply." (*Ibid.*, first italics added.) The *Baharian-Mehr* court first concluded that the defendant's anti-SLAPP motion "cherry-picked" allegations from the many others in the complaint. (*Ibid.*) The court then went on to reason, "Baharian-Mehr's allegations relating to the hiring of attorneys and filing a lawsuit against [the partner who had served as manager] do not

22

constitute the '*overall thrust' of the complaint*, which relates to mismanagement and misuse of corporate funds. The payment of attorneys and hiring of a private investigator constitute only a few of many examples of such mismanagement. The list of specific alleged misuses of corporate funds, for example, constitutes almost two pages of the complaint. The gravamen of Baharian-Mehr's complaint is not that Smith's petitioning activity caused him harm, but that his wasteful and unnecessary spending on attorneys and investigators did. In this instance, the mention of protected activity is 'only incidental' to a business dispute based on nonprotected activity. [Citation.] Thus, we find the court properly denied Smith's anti-SLAPP motion." (*Id*. at p. 273, italics added.)

*Baharian-Mehr* does not help respondent. After *Baral*, when deciding whether claims based on protected activity arise out of protected activity we do not look for an overall or gestalt "primary thrust" or "gravamen" of the complaint or even a cause of action as pleaded. Indeed, the *Baral* court did not use the terms "principal thrust" or "gravamen" as a way to describe whether claims are subject to being struck under the anti-SLAPP statute. Employing terms frequently used by Courts of Appeal in anti-SLAPP cases, our high court in *Baral* indicated that the proper approach is to determine whether an allegation or claim of protected activity is " 'merely incidental' " or " 'collateral' " to a cause of action. (*Baral, supra*, 1 Cal.5th at p. 394.)[9] Claims that are merely incidental or collateral are not subject to section 425.16. (*Ibid*.)

--------

[9] See also *Wallace, supra*, 196 Cal.App.4th at pages 1183, 1190-1191, where the court concluded that acts are incidental to a claim and incidental to any unprotected activity on which the claim is based, only if the acts are not alleged to be the basis for liability; further concluded that the gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action; and criticized the gestalt approach for determining the primary thrust or gravamen as being subjective and unpredictable and encouraging crafty pleading to skirt the protections of the SLAPP statute.

23

While the court in *Baral* did not expressly address the gestalt "principal thrust" or "gravamen" analysis used in cases like *Baharian-Mehr*, it did address the defendant's claim that a " 'cause of action' " arising from protected activity should be defined in terms of the primary right theory. (*Baral, supra*, 1 Cal.5th at p. 394.) Under this theory, a primary right is indivisible and gives rise to a cause of action, which could involve both protected and nonprotected activity. (*Ibid.*) The defendant asserted in *Baral* that such a cause of action would not be subject to the anti-SLAPP statute. (*Ibid.*) In rejecting the primary right theory, our high court likened anti-SLAPP motions to conventional motions to strike, which may be employed to challenge particular allegations. (*Ibid.*) Our high court suggested that an interpretation of section 425.16 which would not allow for the striking of particular allegations would be inconsistent with the Legislature's use of the term " 'special motion to strike.' " (*Baral*, at p. 394.) Our high court also stated: "the primary right theory is notoriously uncertain in application. . . . The theory is ill-suited to the anti-SLAPP context, where the Legislature authorized a special motion to strike only claims that arise from protected speech or petitioning activity." (*Id.* at p. 395.)

Thus, we reject the gestalt "primary thrust" or "gravamen" approach used by the *Baharian-Mehr* court (whether applied to the entire complaint or individual causes of action) and look simply to whether the claims involving protected activity are merely incidental or collateral to the causes of action as those terms were defined in *Baral*, i.e., whether the allegations are merely background or provide context or whether the allegations support a claim for recovery. (*Baral, supra*, 1 Cal.5th at p. 394.) Here, the allegations we have identified in the cross-compliant do not merely provide context for the lawsuit; the allegations both involve protected activity and purport to support claims for recovery. (*Ibid.*; *Wallace, supra*, 196 Cal.App.4th at pp. 1190-1191.) Thus, the claims we have identified are subject to section 425.16. Additionally, there are other "[a]llegations of protected activity supporting" these claims in the cross-complaint which

also must be eliminated unless they support a distinct claim on which respondent can show a probability of prevailing. (*Baral*, at p. 396.)

Accordingly, we conclude that appellants made their threshold showing of demonstrating that claims in respondent's first through third causes of action arose from protected activity, shifting the burden to respondent to show a probability of prevailing on the merits of those discrete claims. We therefore turn to consideration of whether respondent established a probability of prevailing on the merits on those claims.

## B. Probability of Prevailing on the Merits[10]

### 1. First Cause of Action - Breach of Fiduciary Duty

In her first cause of action, to recover damages for breach of fiduciary duty, respondent asserted that appellants breached their fiduciary duty to her by "paying themselves excessive salaries, by wrongfully converting corporate assets, *by filing and maintaining a frivolous lawsuit against* [*her*] and by failing to make pro-rata disbursements to [her] as a minority shareholder of the corporation." (Italics added.) Because only the italicized language constitutes a claim based on protected activity, we only consider whether the respondent established that this particular claim was both legally sufficient and factually substantiated. (*Baral, supra*, 1 Cal.5th at p. 396.)

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of fiduciary duty; and (3) damages. (*Oasis, supra*, 51 Cal.4th at p. 820.)

---

[10] Appellants assert that the filing of a lawsuit is privileged conduct under Civil Code section 47, and therefore respondent cannot meet her burden in opposing their motion with respect to the protected activity. In light of our determination that respondent cannot establish a probability of prevailing on the merits on those claims for the reasons we shall discuss, we need not address appellants' contentions that the allegations of protected activity involve privileged conduct under Civil Code section 47.

As to the first element, "California courts 'have often recognized that majority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner.' " (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1253 (*Jara*), quoting *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108 (*Jones*).) Additionally, directors, such as appellants, owe a fiduciary duty to the corporation and to its beneficiaries to perform their duties "in good faith, in a manner such director[s] believe[] to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances." (Corp. Code, § 309, subd. (a); see *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 506.) It is clear that, under the circumstances at issue here, and based on the admissible materials submitted by respondent, appellants owed respondent a fiduciary duty in their capacities as majority shareholders and directors of the corporation.

Relevant to the second and third elements and respondent's allegation that the appellants breached their fiduciary duty by filing and maintaining a frivolous lawsuit against her, " '[m]ajority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority.' " (*Jara, supra*, 121 Cal.App.4th at p. 1253, quoting *Jones, supra*, 1 Cal.3d at p. 108.) As our high court stated in *Jones*, "[a]ny use to which [majority shareholders] put the corporation or their power to control the corporation *must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business.*" (*Jones*, at p. 108, italics added.)

In support of her position, respondent submitted, among other things, her declaration, share certificates, and the agreement of purchase and sale of the corporation and its assets to Clark. Respondent's share certificate sets forth her ownership of 125 shares in the corporation, which amounts to 25 percent of the 500 issued shares. It is

26

undisputed that appellants together own the other 375 shares, or the remaining 75 percent interest in the corporation. Based on her personal knowledge, garnered from her role as a shareholder and officer in the corporation, respondent stated that, after the sale of the corporation's assets to Clark, the corporation continued to operate only as a means of accepting regular payments from Clark and distributing those funds to its shareholders. Indeed, the original complaint alleged as much (the corporation "has continued to exist for the purpose of receiving continuing payments in connection with the sale of its business"), although this language was qualified somewhat in the amended complaint in which appellants were joined as plaintiffs (the corporation "has continued to exist in part to receive continuing payments in connection with the sale of its business").

While this evidence may be relevant to certain claims in respondent's first cause of action, it is insufficient to establish defendant's probability of prevailing on the claim that appellants breached their fiduciary duty to her by filing and maintaining *a frivolous lawsuit* against her. Crucially, respondent has not factually substantiated her claim that the lawsuit is *frivolous*. Essentially, respondent has alleged that appellants employed fraud and demonstrated bad faith in filing and maintaining the lawsuit against her. What respondent has not done is factually substantiate her claim in any way.

"[T]he loss of corporate profits, revenues, or assets as a result of negligent or intentional wrongdoing by a corporation's officers, directors, or majority shareholders results in corporate injury, for which . . . the corporation may sue to recover." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 230.) Thus, the fact that appellants, acting on behalf of or as controlling voice of the corporation, sued respondent, its current or former officer, alleging, inter alia, breach of fiduciary duty, does not itself establish a breach of fiduciary duty owed to respondent absent a showing of fraud or bad faith as alleged by respondent. Again, respondent has not substantiated her claim of fraud or bad faith or that the lawsuit is frivolous.

27

In the absence of any such showing, we conclude that the claim in the first cause of action alleging that the appellants breached their fiduciary duty to respondent "by filing and maintaining a frivolous lawsuit against [her]" must be struck pursuant to section 425.16, subdivision (b)(1). The remainder of the cause of action shall remain undisturbed.

### 2. Second Cause of Action - Conversion

In the second cause of action, to recover damages for conversion, respondent asserted that appellants "have willfully, intentionally and wrongfully converted corporate assets of [the corporation], all to [respondent]'s direct and proximate detriment, and converted them to their own use by, among other things, paying themselves excessive salaries, making disbursements to themselves without making pro-rata disbursements to [respondent], *and by wrongfully utilizing corporate assets to fund the above-captioned frivolous lawsuit brought in bad faith against* [*respondent*]." (Italics added.) Again, because only the italicized language constitutes a claim based on protected activity, we only consider whether the respondent established that this particular claim was both legally sufficient and factually substantiated. (*Baral, supra*, 1 Cal.5th at p. 396.)

" ' " 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.' " ' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240 (*Lee*).)

As with her first cause of action, we conclude that respondent has failed to factually substantiate the claim that is based on protected activity. Again, respondent's evidentiary submissions do not factually substantiate her claim that the lawsuit against her is frivolous or was brought against her in bad faith. Therefore, she has not factually substantiated her claim that the use of corporate resources to fund the litigation

28

constituted " ' " 'conversion by a wrongful act or disposition of property rights.' " ' "[11] (*Lee, supra*, 61 Cal.4th at p. 1240.)

Accordingly, we conclude that the claim in the second cause of action alleging that the appellants converted corporate assets "by wrongfully utilizing corporate assets to fund the above-captioned frivolous lawsuit brought in bad faith against [respondent]" must be struck pursuant to section 425.16, subdivision (b)(1). The remainder of the cause of action shall remain undisturbed.

### 3. Third Cause of Action - Negligence

In the third cause of action, to recover damages for negligence, respondent asserted that appellants had breached the duties owed to her "by, among other things, failing to make timely disbursements to [respondent] as a minority shareholder . . . , *by wrongfully depleting and wasting corporate assets to fund the instant litigation against* [*respondent*] *without any reasonable justification*, and by paying themselves excessive salaries as officers of [the corporation], thereby further wasting corporate assets." (Italics added.)

In order to prove facts sufficient to support a finding of negligence, a plaintiff must show: (1) the defendant had a duty to use due care; (2) the defendant breached that duty; and (3) the breach was the proximate or legal cause of the resulting injury. (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629.) Even assuming the fiduciary duty appellants owed to respondent as directors and majority shareholders establishes the

---

[11] In light of this determination, we need not address appellants' contention that respondent cannot demonstrate a probability of prevailing on her conversion cause of action because she cannot demonstrate a present ownership interest or right to possession of any property at issue. To the extent that the contention is based on the protected activity, it is rendered moot by our determination that respondent has failed to support her claims that the lawsuit is frivolous and brought in bad faith; to the extent that it is not based on protected activity, the contention is not properly before us for consideration on the appeal from the denial of a special motion to strike pursuant to section 425.16.

29

existence of a duty owed to her in the context of a negligence cause of action, as respondent acknowledges, her negligence cause of action "mirrors her claim for breach of fiduciary duty." Thus, our analysis of respondent's probability of prevailing on it is the same. Respondent has failed to factually substantiate her allegation that is based on protected activity in the third cause of action -- that appellants were negligent and breached their duties to her "by wrongfully depleting and wasting corporate assets to fund the instant litigation against [respondent] without any reasonable justification." As with her claim for breach of fiduciary duty, respondent has not factually substantiated her contention that the lawsuit against her was frivolous or without any reasonable justification.

We conclude that the claim in the third cause of action alleging that the appellants were negligent and breached their duties to respondent "by wrongfully depleting and wasting corporate assets to fund the instant litigation against [respondent] without any reasonable justification," must be struck pursuant to section 425.16, subdivision (b)(1). The remainder of the cause of action shall remain undisturbed.

### 4. Additional Allegations in the Cross-Complaint

Allegations of protected activity supporting stricken claims are to be eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing. (*Baral, supra*, 1 Cal.5th at p. 396.) Therefore, we also strike from the cross-complaint all other allegations of protected activity which support the claims struck from each of the three remaining causes of action.

### DISPOSITION

The trial court's order is modified to grant the special motion to strike regarding the following claims in respondent's cross-complaint: (1) in paragraph 13 that, "From approximately July 2011 through the present, Cross-Defendants Valerie Richards and Linda Harrop have wrongfully utilized George's Pest Control's assets to fund the above-captioned litigation against Cross-Complainant"; (2) in paragraph 14, that appellants

wrongfully converted the corporation's assets by "using corporate assets to fund the above-captioned frivolous, bad faith lawsuit against Cross-Complainant"; (3) in paragraph 15, that appellants acted in bad faith "by bringing the instant lawsuit against Cross-Complainant, funded by corporate monies, without any reasonable justification therefor[e]"; (4) in the first cause of action, in paragraph 19, that appellants breached their fiduciary duty to respondent "by filing and maintaining a frivolous lawsuit against Cross-Complainant"; (5) in the second cause of action, in paragraph 24, that appellants converted corporate assets "by wrongfully utilizing corporate assets to fund the above-captioned frivolous lawsuit brought in bad faith against Cross-Complainant," and in paragraph 26 that respondent will continue to be harmed by appellants' "wrongful conversion of corporate assets to fund the instant litigation against Cross-Complainant"; and (6) in the third cause of action, in paragraph 31, that appellants were negligent and breached their duties to respondent "by wrongfully depleting and wasting corporate assets to fund the instant litigation against Cross-Complainant without any reasonable justification."

As so modified, the order is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)


                                                MURRAY          , J.

We concur:


      ROBIE            , Acting P. J.


      MAURO          , J.

31