Filed 12/19/22  Vincent v. Certain Underwriters at Lloyd's London CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARTHA VINCENT et al.,<br><br>　Plaintiffs and Appellants,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON,<br><br>　Defendant and Respondent. | 2d Civ. No. B316786<br>(Super. Ct. No. 56-2012-00421417-CU-BC-VTA)<br>(Ventura County) |

Tenants were evicted from landlord's premises.  Landlord refused to allow them to retrieve their personal property.  Tenants sued landlord, alleging conversion of and negligent damage to their personal property.  Landlord tendered the lawsuit to the insurer, Underwriters at Lloyd's London (Lloyd's).  The insurer denied coverage.  Tenants obtained a judgment against landlord for conversion and negligence.  Landlord sued the insurer for breach of contract and bad faith.  The trial court granted the insurer summary judgment on the grounds that the

conversion occurred prior to the policy period and was not an occurrence covered by the policy.

We agree with the trial court and affirm the summary judgment in all respects.

## FACTS

Martha Vincent leased her single family residence in Westlake Village to Dawn Christie for two years beginning January 1, 2009. Christie and her husband intended to operate a spa business, Togetherness Productions, LLC on the premises.[1] Because the premises was used as a business, Vincent did not have liability insurance for the premises.

Christie soon began falling behind on her rent. As a result, Vincent brought an unlawful detainer action that resulted in a judgment of possession and damages for unpaid rent in the amount of $115,708. Vincent obtained the judgment on April 10, 2010, but Christie remained in possession until July 27, 2010, when the sheriff executed a "lockout" and evicted her.

During the eviction Christie was allowed to take only a few personal items with her. Christie requested that she be allowed to return to the residence to remove her personal property. Vincent's husband, who was managing the property, refused. The bulk of her personal property, including exercise and spa equipment, remained on the premises.

On July 28, 2010, the day after the eviction, Christie spoke with Vincent's attorney about the return of her personal property. Vincent's attorney suggested Christie call back in two days "in order to try and hash out the details of how to return [her] personal property subject to [Vincent's] claim that any

---

[1] We refer to Christie, her husband, and their business collectively as "Christie."

2

valuable items be held for execution and levy by the sheriff in order to be applied to the outstanding money judgment owed by [Christie] to [Vincent]."

Christie spoke again with Vincent's attorney on August 2, 2010. She again demanded the return of her property. On the same day, Christie filed an ex parte motion to compel "emergency mediation" to work out terms to get her business equipment, office supplies, and other personal property returned.

On August 2, 2010, at 5:35 p.m., Vincent's insurance broker sent an e-mail to the underwriter for Lloyd's as follows:

"[T]enants that were conducting business out of home are no longer renting at property location. They have been evicted and are not physically at location. However, some of their personal property is still at house in the control of insured. There is a court date this Wednesday to determine what will be done with the items still at residence.

"Insured is now trying to rent out property as single family private residence. I would like to add Liability ($500,000) and Medical ($10,000) coverage to existing policy as soon as possible."

Vincent opposed Christie's ex parte motion on August 4, 2010, stating that she is willing and able to return all of Christie's personal property except the spa and exercise equipment. She also stated she will seek a court order allowing her to execute on the equipment to satisfy the judgment against Christie. The trial court denied Christie's ex parte motion on August 18, 2010.

Lloyd's policy providing Vincent with liability coverage went into effect on August 3, 2010.

3

The parties could not settle their differences. On December 3, 2010, Christie filed an action[2] against Vincent, the gravamen of which was the conversion and negligent damage to her personal property.

On January 20, 2011, Vincent tendered Christie's lawsuit to Lloyd's for defense. Lloyd's denied coverage. Vincent brought the instant action against Lloyd's for breach of contract under the policy and breach of the covenant of good faith and fair dealing.

*Ruling in conversion action*

In June 2014, the trial court issued a ruling in Christie's conversion action. The court found that Vincent converted Christie's property and negligently damaged the property in moving and storing it. The court found the conversion was accomplished on July 27, 2010, the day of the lockout.

*Ruling in instant case*

The trial court found that it is undisputed that the tortious acts underlying the conversion litigation arose before Vincent applied for and Lloyd's issued the property damage liability policy at issue. Vincent was aware of the underlying dispute prior to the effective date of the liability endorsement. Thus, Lloyd's was justified in denying coverage. The court also found the conversion was not an occurrence within the meaning of the policy.

DISCUSSION

I.

*Standard of review*

Summary judgment is properly granted only if all papers submitted show there is no triable issue as to any material fact

---

[2] *Christie v. Vincent* (Super. Ct. Ventura County, 2010, No. 56-2010-00386347-CU-BC-VTA) (conversion action).

4

and the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  The court must draw all reasonable inferences from the evidence set forth in the papers except where such references are contradicted by other inferences or evidence which raise a triable issue of fact.  (*Ibid*.)  In examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.  (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19.)

The moving party has the initial burden of showing that one or more elements of a cause of action cannot be established.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)  Where the moving party has carried that burden, the burden shifts to the opposing party to show a triable issue of material fact.  (*Ibid*.)  Our review of the trial court's grant of the motion is de novo.  (*Id*. at p. 767.)

## II.
### *Conversion*
### *(a) Policy period*

The undisputed evidence is that the conversion occurred prior to the effective date of the policy.

Conversion is the wrongful exercise of dominion over the personal property of another.  (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1173.)  The trial court found in the underlying conversion action that the conversion occurred on July 27, 2010, the day of the lockout.  Vincent's husband, who was managing the property admitted that on the day of the lockout, he did not allow Christie back into the property to pick

5

up her personal property. On July 28, 2010, Vincent's attorney told Christie that Vincent was holding the property so she could execute on it to satisfy her judgment for unpaid rent. Vincent confirmed in her response to Christie's ex parte motion that she was holding the property to execute on it. The conversion and dispute arose prior to the August 3, 2010, effective date of the policy.

Vincent argues that both the trial court in the underlying conversion action and the court in this case determined that the date of conversion was August 16, 2010. That is simply not true. The trial court in the underlying conversion case found "[W]hen [Vincent] prevented [Christie] from retrieving their property on the day of the lockout (July 27, 2010), and then put them in storage, she accomplished a conversion of [Christies'] property." The exercise of dominion over Christie's property began on July 27, 2010, when Vincent's husband refused to let Christie back into the house to remove her property.

In the instant case the trial court found: "It is materially undisputed that the tortious acts underlying the [conversion action] litigation (conversion of tenants' personal property by landlord) arose before [Vincent] applied for and Lloyd's issued the property damage liability policy at issue in this action. It is undisputed that [Vincent was] aware of the underlying dispute concerning the personal property damages claimed by the tenants prior to the effective date of the liability endorsement here."

Vincent claims that she was lawfully holding Christie's personal property until Christie paid for the storage costs. It is true that Vincent demanded storage costs. But the undisputed evidence shows that Vincent was holding the property so that she

6

could execute on it to satisfy her judgment against Christie for unpaid rent.

Vincent's reliance on *Chu v. Canadian Indemnity Co.* (1990) 224 Cal.App.3d 86 (*Chu*) is misplaced. Owners in a condominium complex sued the developer for damages arising from construction defects. The developer tendered defense to its insurer. Some of the defects were known prior to the effective date of the policy. Other defects appeared after the effective date. The insurer neither accepted nor denied coverage. The developer settled the claims on its own and sued the insurer for bad faith. The trial court granted summary judgment to the insurer on the ground that the defects that appeared after the effective date of the policy were simply a manifestation of the faulty construction that existed prior to the effective date of the policy. The Court of Appeal reversed, holding that each set of distinct defects must be analyzed separately.

Vincent argues that like *Chu*, there is a triable issue of fact as to whether the events during the policy period can be characterized as necessary extensions of pre-coverage events. But here, there is only one event, conversion of Christie's property. It occurred prior to the effective date of the policy. (See *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1433 [cause of action for conversion accrues when defendant acts in a manner inconsistent with the owner's interest].) Here, unlike *Chu*, there is no arguable basis for distinguishing events that that occurred prior to the policy period from events occurring during the policy period.

*(b) Occurrence*

The undisputed evidence shows that Christie's claim for conversion arose prior to the effective date of Lloyd's policy. In

7

addition, the conversion did not constitute an "occurrence" to which the policy applies. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions . . . ." An accident is ""an unexpected, unforeseen or undesigned happening or consequence from either a known or unknown cause."" (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 807.)

Here the undisputed evidence shows that Vincent did not accidentally convert Christie's property. Instead, Vincent intentionally retained Christie's personal property with the expectation she could execute on it to satisfy her judgment. That does not constitute an occurrence covered by Lloyd's policy.

III.

*Negligence*

Vincent contends she was entitled to defense and indemnity for Christie's cause of action for negligence.

Christie's complaint in the underlying conversion action alleged that Vincent negligently damaged her property while it was in Vincent's custody. The trial court in the underlying action awarded damages against Vincent for negligence.

Vincent raised the argument concerning negligence for the first time in her reply brief. We do not consider issues raised for the first time in the reply brief. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Moreover, the negligence cause of action was subsumed within the conversion cause of action. It was simply part of Vincent's exercise of dominion and control over Christie's personal property.

8

DISPOSITION

The summary judgment is affirmed.  Costs are awarded to Respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


BALTODANO, J.

9

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____

Law Office of David B. Cohen and David B. Cohen for Plaintiffs and Appellants.

Vanderford & Ruiz, Ty S. Vanderford and Mark R. Irvine for Defendant and Respondent.